**Jimmy HOWLETT, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–96–112–CR.**

Court of Appeals of Texas, Eastland.

May 29, 1997.

---

Ed Paynter, Law Offices of Ed Paynter, P.C., Abilene, for appellant.

James Eidson, Criminal District Attorney, Kollin Shadle, Appellate Section, Criminal District Attorney's Office, Abilene, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

The State charged appellant with criminal mischief and alleged that he illegally diverted gas from Lone Star Gas Company. The jury found appellant guilty. The trial court assessed punishment at confinement for four years, but suspended the imposition of the confinement and placed appellant on community supervision for four years. The court also fined appellant $500. Because the jury was not instructed on the issue of limitations, we reverse and remand. However, since appellant's points regarding sufficiency of the evidence, if sustained, would bar a remand, we first must discuss those points. Hooker v. State, 621 S.W.2d 597 (Tex.Cr.App.1981).

### Factual Summary

On August 5, 1993, a construction crew with Lone Star was repairing leaks in a main gas line in the alley behind appellant's residence. The repair project lasted about a week. On August 12, the construction crew found an underground "illegal tap" connected to the inlet riser of the gas meter behind appellant's residence. The tap was made by tapping a saddle valve into the side of Lone Star's service line so that gas was diverted before it went through Lone Star's metering device. Robert McFerrin, a "customer service tech" with Lone Star, discovered the saddle valve. McFerrin testified that: "Whenever [he] pulled the riser away from the bank [he] heard gas escaping out from the riser here [apparently indicating] and [he] looked back and it was blowing out of a valve." There was testimony that the saddle valve was in the "on" position. McFerrin notified his supervisor, Travis E. Miller. Miller came to the project site. Abilene Police Officer Tony Lassiter also came to the site. Miller told appellant what they had found and told him that the gas would not be turned back on. Miller and a construction crew returned to appellant's home the following day. Detective Michael Janusz of the Abilene Police Department went with them. They saw copper tubing in the hole around the inlet riser in the area of the tap. They

also found copper tubing and fittings buried on appellant's property and in a garage which was attached to appellant's house. Miller testified that the copper tubing was not connected to anything at that time because the ends of the tubing had recently been cut. The crew also located a "T" type connection in the copper line within four or five feet of appellant's house where the line divided into different directions. The ground around the "T" was black, indicating that gas was leaking from the connection. Although Lone Star did not test for gas inside the copper tubing, they did check for and find natural gas on the outside of the copper tubing at the "T." Miller also testified that they saw signs of recent digging at places over the line and that the line had been cut in several places. The record reveals the following exchange between the State's attorney and Miller:

Q: Now, from everything that you saw that day and including this riser, the indication of the gas in the ground, do you have an opinion as to whether or not gas was being diverted from the meter into the residence at 1502 Ballinger?

A: There was gas on this line going to the buildings.

Q: And going to the residence at 1502 Ballinger?

A: Yes, sir.

Detective Janusz searched appellant's residence on August 27, 1993, pursuant to a search warrant. He found buried lines consisting of copper tubing and fittings in appellant's yard. He also located a line of copper tubing underneath the ground behind appellant's residence. This line led into appellant's garage. Copper tubing was also found sticking out of the baseboard in appellant's garage. Detective Janusz saw a 1936 Ford Coupe and two gas heaters in appellant's garage. The threads on the heater connections indicated that they had recently been disconnected from the copper tubing; there was "dust on the entire unit except the connection to … some copper tubing." Sharron Power, appellant's ex-wife, testified that in the fall of 1985 she had seen appellant bury copper tubing in the grass behind their home. This tubing went from the alley (where Lone Star's line and gas meter were) to a shop building and also to appellant's house and garage. Power saw appellant drilling into Lone Star's gas line. She testified that, when she asked appellant what he was doing, he told her that he was hooking up the copper lines. Power also saw appellant connect the tubing to a small gas heater in his garage. She testified that appellant used a heater to protect the paint on an early model Corvette which he kept in the garage.

Appellant testified and denied any knowledge of the illegal tap. He told about a situation in 1977 when a construction crew was digging for a foundation and found copper tubing buried on his property. The crew told appellant about the tubing, and he told them to "take and dispose of it, get rid of it, crimp it off, etc." He did not know what they had actually done about it. Appellant testified that the only other copper tubing on the property that he knew about was some copper tubing that carried water to an evaporative cooler from an outdoor hydrant.

## Points of Error

Appellant argues in ten points of error that the trial court erred: (Point One) in failing to grant his motion for instructed verdict because the evidence showed that prosecution was barred by the statute of limitations; (Point Two) in failing to give an instruction on the statute of limitations; (Point Three) in failing to grant his motion for new trial because the evidence showed that prosecution was barred by the statute of limitations; (Point Four) in refusing to instruct the jury "on the law as it relates to the definition of 'on or about' "; (Point Five) in failing to grant appellant's motion to suppress evidence because there was no probable cause for the search warrant; (Point Six) in failing to grant appellant's motion for new trial because evidence was seized pursuant to a search warrant that was issued without probable cause; (Point Seven) in failing to instruct the jury on the definition of "pecuniary loss" and "substantial inconvenience"; (Point Eight) in failing to instruct the jury on inadvertent use; (Point Nine) in failing to instruct the jury on accomplice testimony; and (Point Ten) in failing to grant an in-

structed verdict because the evidence was insufficient to support his conviction.

### Motion for Instructed Verdict

The indictment was presented on December 2, 1993, and alleged that the offense occurred on or about the 5th day of August 1993. Although the indictment alleged a date within the statute of limitations period, appellant filed a pretrial application for writ of habeas corpus. He alleged that his prosecution was barred because the indictment was not presented within three years from the commission of the offense.[1] Specifically, appellant argued that the offense occurred, if it did occur, in 1985 or earlier and that the limitations period had expired. The trial court denied appellant's application, and he appealed that denial to this court. The issue on appeal was: when does the statute of limitations commence to run for the offense of criminal mischief by the unauthorized diversion of natural gas—at the time the unauthorized tap is first installed or at a later date when it causes pecuniary loss to the owner? We affirmed the trial court's denial of the application for writ of habeas corpus and held that the offense was a " 'continuing' offense that is still being committed as long as the tap is installed and gas is being diverted, causing loss to the owner." *Ex parte Howlett*, 900 S.W.2d 937 (Tex.App.—Eastland 1995, pet'n ref'd).

Appellant argues that the trial court erred in failing to grant his motion for an instructed verdict for two reasons: (1) because the evidence showed that the statute of limitations had expired and (2) because the evidence was insufficient to show that gas was being diverted at any time during the limitations period. He maintains that the evidence only showed that, if there was a crime committed, which he denies, it was committed in 1985 when Power said she saw appellant make the illegal tap.

▮▮▮▮ At the time of trial, the trial court had before it our prior opinion in *Ex parte Howlett*, supra. It is reasonable to assume from the record that the trial court found that the issue of limitations previously had

been resolved. In fact, the State has taken the position on appeal that the doctrine of "law of the case" applies and that further consideration of the issue is foreclosed. See *Ware v. State*, 736 S.W.2d 700 (Tex.Cr.App. 1987). The doctrine of "law of the case" provides that determinations of *questions of law* are dispositive of the same *questions of law* in all subsequent stages of the case. However, under the current status of our law, the issue of limitations can be raised as a challenge to the indictment (a question of law), as well as a challenge to the sufficiency of the evidence (a question of proof). See *Van Hoang v. State*, 939 S.W.2d 593 (Tex.Cr. App.1996). These are two distinctly different challenges. When this court considered this case on appellant's habeas corpus appeal, the limitations issue was presented as a challenge to the indictment. It is now before this court as a challenge to the sufficiency of the evidence, i.e., did the State prove before the jury that the offense occurred during the limitations period? "Law of the case" does not apply.

▮▮▮▮ A challenge to the trial judge's ruling on a motion for an instructed verdict is, in actuality, a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Cr.App. 1990); *Moreno v. State*, 755 S.W.2d 866 (Tex. Cr.App.1988). If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appellant's motion. The same standard of review applies to direct and to circumstantial evidence. *Madden v. State, supra.* The cases instruct us that we are to view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991). Our task is not to reevaluate the weight and credibility of the evidence but, rather, to determine whether the decision reached by the jury was a rational one. *Muniz v. State*, 851 S.W.2d 238 (Tex.

---

1. TEX. CODE CRIM. PRO. ANN. art. 12.01(5) (Vernon Supp.1997) sets the limitations period for this offense at three years from the date of the commission of the offense.

Cr.App.1993). We do not hold that limitations is an "essential element of the offense." We are aware, however, of the plethora of cases which require that the State prove that the offense was committed within the limitations period. See *Van Hoang v. State, supra; Lemell v. State,* 915 S.W.2d 486 (Tex. Cr.App.1995);[2] *Barnes v. State,* 824 S.W.2d 560 (Tex.Cr.App.1991). However, we do not believe that requirement to be tantamount to classifying limitations as an "element of the offense." Nevertheless, under the current status of our case law, we believe that we are required to apply the standards set forth in *Jackson* and *Geesa.* When we examine the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that the offense was continuing up to and including the date alleged in the indictment and was within the limitations period.

In Point of Error No. 10, appellant claims that continuing pecuniary loss to Lone Star is an element of the offense. He further argues that there was no evidence that gas ever flowed from Lone Star's line into the illegal line. Therefore, he maintains that the trial court should have granted his motion for instructed verdict. We disagree. When we examine the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found this essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia, supra; Geesa v. State, supra.*

Additionally, in Point of Error No. 3, appellant claims that the trial court erred in denying his motion for new trial because "the verdict was contrary to the law and evidence ... clearly showed that prosecution of appellant was barred by the statute of limitations." Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that the offense was continuing up to and including the date alleged in the indictment and was within the limitations period. Furthermore, we find that the verdict in this case is not so against the great

weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996).

Points of Error Nos. 1, 3, and 10 are overruled.

### *Limitations Instruction*

At the conclusion of the evidence, appellant asked the trial court to instruct the jury on the three-year statute of limitations applicable to this offense. Appellant tendered a correct instruction, but the trial court gave neither that nor any other limitations instruction. In his second point of error, appellant maintains that the trial court's failure to give the instruction is reversible error.

■ We have already discussed the inapplicability of the doctrine of "law of the case." Appellant raised the issue of limitations. Under the current status of our law, the issue was to be decided by the jury. Because the issue of limitations had been raised and the jury was to decide the issue, the trial court should have given the requested instruction; the failure to do so was error. *Van Hoang v. State, supra.*

■ Having found error, we next turn to a determination of whether appellant was harmed. Appellant properly preserved the error. We are not to determine whether there was "egregious" harm, as in cases in which there has been no objection but, rather, whether there was *any* harm, regardless of degree. *Hutch v. State,* 922 S.W.2d 166 (Tex.Cr.App.1996). A reviewing court may consider the following factors in the harm analysis: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Bailey v. State,* 867 S.W.2d 42 (Tex.Cr.App.1993), citing *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1984).

Appellant hotly contested the limitations issue at every stage of the proceedings from

---

**2.** We note that a motion for rehearing remains pending in the Court of Criminal Appeals in *Lemell.* Also, we call attention to the concurring and dissenting opinion of Presiding Judge

McCormick in *Van Hoang v. State, supra,* wherein he declares that *Van Hoang* removes any suggestion in *Lemell* that limitations is an element of the State's case.

before trial until the current time. Under the charge given to the jury, it was possible for the jury to have found appellant guilty for conduct not within the limitations period. The application paragraph of the jury charge authorized the jury to find appellant guilty if it believed:

[F]rom the evidence beyond a reasonable doubt that on or about the 5th day of August, 1993 [appellant] did then and there intentionally or knowingly tamper with tangible property of Oliver Lee Harris, the owner of a public gas company, to-wit: Lone Star Gas Company, without the effective consent of the said owner, and did thereby divert and cause to be diverted, in whole or in part, the gas service from said public gas company, by then or there connecting an unauthorized gas line which resulted in gas being diverted to a residence at 1502 Ballinger, Abilene, Taylor County, Texas, thereby preventing the said gas service from being correctly registered by a metering device of the said Oliver Lee Harris, thereby causing pecuniary loss or substantial inconvenience to the said Oliver Lee Harris, then you will find [appellant] guilty as charged in the indictment.

While it was deliberating and attempting to make that determination, the jury sent this note to the trial court:

Does this need to be proven on this date, August 5, 1993, that [appellant] tampered then or can we decide on this determination on 1985? Does this also include disconnection in August 1993, be considered tampering?

The trial court answered:

The Court, under the law, is not permitted to answer the question which you have presented. Please consider only the instructions which have already been given you and the evidence admitted before you during the trial of this cause, and continue your deliberations.

■ Under the state of this record, we are unable to say that there was no harm to appellant. *Bailey v. State, supra; Almanza ·v. State, supra.* Appellant's second point of error is sustained, and this cause is remanded to the trial court for a new trial.

Although it is not necessary to discuss the remainder of appellant's points of error, in view of our remand, we will discuss the remaining points.

*"On or About" Jury Instruction*

In his fourth point, appellant argues that the trial court erred in "failing to instruct the jury on the law as it relates to the definition of 'on or about' as alleged in the indictment." Appellant requested the following instruction:

The indictment in this case alleges that the offense, if any, was committed, occurred on or about the 5th day of August, 1993. You are thereby instructed that the State is not bound by the exact date alleged in the indictment and may prove the offense, if any was committed, was committed before, on or after the date alleged in the indictment. Provided, however, that the date proved, if any, must be a date before the indictment is presented and filed in Court and not so remote as to be barred legally by limitations. The indictment in this case was presented and filed in the 42nd District Court of Taylor County, Texas, on December 2, 1993 and the applicable period of limitations is three years from the date of the commission of the offense, if an offense was committed. An indictment must be presented within three years after the date of the commission of the offense, if an offense was committed.

The requested instruction was raised by the evidence and, if it had been given, appellant's jury charge objections would have been met by this one instruction. However, even if the failure to instruct the jury on the meaning of "on or about" was error, it was not by itself calculated to injure appellant. *Almanza v. State, supra.* The fourth point is overruled.

■ In his seventh point of error, appellant argues that the trial court erred in failing to define the terms "pecuniary loss" and "substantial inconvenience." These terms are not defined in the Penal Code. Where there is no statutory definition of a term, the question of the trial court's obligation to define the term depends on whether the term

has such a common and ordinary meaning that jurors can be presumed to know and apply the meaning of the term. *Russell v. State,* 665 S.W.2d 771 (Tex.Cr.App.1983), *cert. den'd,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Jurors are presumed to know the meaning of terms that are common and are used in the ordinary sense of the terms. *Russell v. State, supra* at 780. Trial courts are not obligated to define those words or terms that have a common meaning. *Russell v. State, supra.*

■ The trial court did not err in refusing to define the terms "pecuniary loss" and "substantial inconvenience." The terms were used in the ordinary sense and had no significance other than what is commonly and usually understood. Even if it had been error to overrule appellant's request, it would not have been calculated to injure the rights of appellant. TEX. CODE CRIM. PRO. ANN. art. 36.19 (Vernon 1981); *Almanza v. State, supra.* Appellant's seventh point of error is overruled.

In his eighth point, appellant contends that the trial court erred in failing to give an instruction on "inadvertent use." Appellant argues that there was "substantial evidence" that the gas line was tampered with prior to his purchase of the home. Appellant made the following objection to the court's charge:

[Appellant] objects to the Court's charge for its failure to give the jury adequate instructions on inadvertent use of illegally diverted gas....The jury should be instructed in appropriate language that it would not be sufficient to convict [appellant] by simply finding that an illegal tap was made to a gas meter, but instead they should be instructed that they would have to find that he personally did that tap, and then if it was done by another person without his knowledge or consent or acquiescence or engagement therein and he simply inadvertently benefitted from the use of gas diverted through the conduct of

another, that that would be insufficient to make him a party to this crime if a crime was committed and under those circumstances they should be instructed to acquit [appellant].

The record reflects that the jury was instructed that a person commits an offense if: "[W]ithout the effective consent of the owner, he intentionally or knowingly tampers with the tangible property."

■ The trial court did not err in denying appellant's request for an instruction that appellant "personally" connected the illegal tap to the gas line. The jury was charged that, in order to find appellant guilty, it had to find beyond a reasonable doubt that appellant intentionally or knowingly tampered with the property of the owner. Appellant's eighth point of error is overruled.

In his ninth point, appellant argues that the trial court erred in refusing appellant's requested instruction to the court's charge that Power, appellant's ex-wife, was an accomplice witness. Appellant argues that Power was an accomplice because she derived a benefit from the illegal connection.[3]

■ An accomplice witness is one who participated with someone else before, during, or after the commission of a crime. *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Cr. App.1986), *cert. den'd,* 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989); *Harris v. State,* 645 S.W.2d 447 (Tex.Cr.App.1983). A witness is not an accomplice witness just because he knew of the offense and did not disclose it or even concealed it. *Kunkle v. State, supra.* The witness' presence at the scene of the crime does not render that witness an accomplice witness. *Kunkle v. State, supra.* In order to be an accomplice witness, there must be some evidence of an affirmative act on the witness' part to assist in the commission of the offense. *Kunkle v. State, supra* at 441.

3. TEX. PENAL CODE ANN. § 28.03(c) (Vernon 1994) provides:
For the purposes of this section, it shall be presumed that a person who is receiving the economic benefit of ... gas ... has knowingly tampered with the tangible property of the owner if the ... supply has been:

(1) diverted from passing through a metering device; or
(2) prevented from being correctly registered by a metering device; or
(3) activated by any device installed to obtain ... gas ... without a metering device.

The evidence showed that Power called Lone Star several times within a few days after she saw appellant connecting the copper tubing to the gas line. Power also moved out of their home shortly after she saw appellant connect the copper tubing into the gas line. Although Power was present when appellant connected the copper tubing to the gas line, there is no evidence that Power actually participated in tampering with the gas line. The fact that Power lived in the home after appellant made the illegal connection does not, by itself, make her an accomplice. Even if it was error not to give an instruction on accomplice witness testimony, the error was not calculated to injure the rights of appellant. Article 36.19; *Almanza v. State, supra.* Appellant's ninth point of error is overruled.

### Search Warrant

In his fifth and sixth points, appellant alleges that the search warrant was insufficient to establish probable cause and constituted a search for "mere evidence." TEX. CODE CRIM. PRO. ANN. art. 18.01(b) (Vernon Supp.1997) provides:

No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested.

A warrant may be issued to search for and seize property or items which are evidence of an offense or which tend to show that a particular person committed an offense. TEX. CODE CRIM. PRO. ANN. art. 18.02(10) (Vernon Supp.1997). A warrant may also be issued to search for and seize implements or instruments used in the commission of a crime. TEX. CODE CRIM. PRO. ANN. art. 18.02(9) (Vernon Supp.1997). To justify the issuance of a search warrant under Article 18.02(10), there must be a supporting affidavit setting out sufficient facts to establish probable cause that a specific offense has been committed; that the specifically-described property or items that are to be searched for or seized constitute either

evidence of that offense or evidence that a particular person committed that offense; and that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. TEX. CODE CRIM. PRO. ANN. art. 18.01(c) (Vernon Supp.1997).

"Mere evidence," as distinguished from the fruits or instrumentalities of a crime, may be seized by officers provided there is a nexus between the items seized and the crime under investigation. *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *Chambers v. State,* 508 S.W.2d 348, 352 (Tex.Cr.App.1974). Officers may seize mere evidence when the objects discovered and seized are reasonably related to the offense under investigation and the discovery is made in the course of a good faith search conducted within the parameters of a valid search warrant. *Warden v. Hayden, supra* at 307–310, 87 S.Ct. at 1650–1652. The scope of a search, during which "mere evidence" may be found, is restricted to the object of the search and the places in which there is probable cause to believe it may be found. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

The affidavit in this case establishes probable cause to issue a search warrant. The affidavit states that the offense of criminal mischief was committed and states that the evidence to be searched for and seized is copper tubing and fittings. The facts set out in the affidavit show that the items to be searched for and seized are evidence of the offense of criminal mischief and show that appellant committed the offense. Specifically, the affidavit states that: (1) on August 5, 1993, appellant refused to allow a Lone Star Gas representative to access the detached building behind appellant's home to investigate a gas leak; (2) on August 9, 1993, while repairing the "main line," a construction and maintenance crew with Lone Star Gas discovered an "illegal connection" which consisted of a copper tubing connector and copper tubing installed on an inlet riser carrying 20 lbs of pressure and installed 12 to 14 inches below the ground; (3) a representative with Lone Star Gas reported that, based on his experience, the "illegal device" was installed

for the purpose of diverting natural gas from the line before it went into the meter to avoid payment for gas; (4) on August 12, 1993, representatives with Lone Star Gas made a report of criminal mischief with the Abilene Police Department; (5) on August 26, 1993, the affiant spoke with appellant's ex-wife who stated that, in 1985, she observed appellant drill into the gas line, connect copper tubing to the line, and divert gas to appellant's residence and a detached garage. The search warrant was signed by the magistrate on August 27, 1997.

█ The affidavit supporting the search warrant stated sufficient facts to establish probable cause in compliance with TEX. CODE CRIM. PRO. ANN. art. 18.01 (Vernon Supp.1997). Moreover, the copper tubing and fittings were the instrumentalities of the offense and, thus, do not constitute "mere evidence."

█ Appellant also argues that the only evidence establishing probable cause for the search was eight years old. In order to support the issuance of a search warrant, the affidavit must show that the act or event upon which probable cause is based occurred within a reasonable time prior to the making of the affidavit. *Gonzales v. State,* 577 S.W.2d 226 (Tex.Cr.App.1979), *cert. den'd,* 444 U.S. 853, 100 S.Ct. 109, 62 L.Ed.2d 71 (1979). The timeliness of information upon which an affidavit is based is dependent upon the type of criminal activity involved. *United States v. Johnson,* 461 F.2d 285 (10th Cir.1972). The affidavit in this case details the events over a three-week period. The information provided by appellant's ex-wife to the police eight years before the warrant was issued does not make the warrant "stale." The offense was a continuing offense as long as gas was being diverted. The affidavit stated facts sufficient to show that gas was being diverted at the time the warrant was issued. Points of Error Nos. 5 and 6 are overruled.

The judgment of the trial court is reversed, and the cause is remanded to the trial court.