Jonathan MORRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–340–CR.

Court of Appeals of Texas, Waco.

Nov. 14, 2001.

Russ Hunt, Jr., Attorney At Law, Georgetown, for appellant.

Riley J. Simpson, Coryell County Dist. Atty., David Castillo, Coryell County Asst. Dist. Atty., Gatesville, for appellee.

Before Chief Justice DAVIS, VANCE and GRAY, Justices.

## OPINION

BILL VANCE, Justice.

Jonathan Morris was indicted for the felony offense of aggravated sexual assault. In a pre-trial motion, Morris requested that the trial court suppress evidence obtained from the execution of a search warrant at his home. It was denied. At the opening of the bench trial, Morris pled guilty without the benefit of a plea bargain. The court accepted the plea and sentenced Morris to thirty years in prison. Morris brings this appeal challenging the trial court's denial of the motion to suppress. Finding that the magistrate had a substantial basis in concluding that the affidavit for the search warrant established probable cause, we will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Davis Suriff is a loss prevention investigator employed by Wal–Mart, Inc., at its store located in Gatesville, Texas. On April 7, 2000, Suriff questioned Sandy Graham, a Wal–Mart employee, about electronic equipment that had been stolen from the store. During the interview, Graham volunteered information about his former lover, Jonathan Morris. Graham told Suriff that Morris, another Wal–Mart employee, was in possession of "nude pictures" of children that Morris had "downloaded" from the Internet. Suriff immediately contacted Joe Ebarb, a detective with the Gatesville Police Department. That same day, Ebarb interviewed Graham about what he knew. Based on the information he received from Graham, Ebarb prepared an affidavit to secure an evidentiary search warrant of Morris's home.

A magistrate reviewed Ebarb's affidavit and issued the warrant. Ebarb and other law enforcement officers executed the war-

rant and seized Morris's computer equipment and related items. On April 10, Morris went to the Gatesville Police Department to speak with Ebarb. Morris told the detective that his computer contained files of child pornography. Ebarb then *Mirandized* Morris, and Morris wrote a statement in which he admitted to possession of child pornography and to having committed sexual assault on a child. Morris also gave Ebarb a digital camera and a "crashed" hard drive which Morris said contained child pornography.

On April 14, Morris again wrote a statement confessing to being in possession of child pornography and to having committed sexual assault on a child. On April 18, the child Morris claimed to have assaulted was interviewed at the Children's Advocacy Center in Belton, Texas. At that time, the child said that Morris had molested him and had taken nude photographs of him. On May 2, a grand jury indicted Morris for aggravated sexual assault, alleging that he "intentionally or knowingly cause[d] the sexual organ of A Solo, a child who was then and there younger than 14 years of age and not the spouse of the defendant, to contact and penetrate the mouth of defendant." TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2001).

In a pre-trial motion, Morris moved to suppress the evidence seized from his home on the ground that the affidavit failed to establish probable cause. After the court denied Morris's motion, he pled guilty to the aggravated sexual assault charge. The court accepted Morris's plea and sentenced him to thirty years in prison. Morris argues in his only point of error that the trial court erred in denying the motion to suppress.

## DISCUSSION

Morris claims violations of the Fourth Amendment of the United States Constitution and Art. I, § 9 of the Texas Constitution.[1] Morris argues that the affidavit on which the warrant was issued does not establish probable cause that child pornography would be found at his home at the time that the warrant was issued. Morris further contends that the evidence obtained during the days following the alleged illegal search, *i.e.*, his confessions and the victim's statement, is an indirect product of the search and should also be excluded under the "fruits of the poisonous tree" doctrine.

### Standard of Review

In *Guzman v. State*, the Court of Criminal Appeals clarified the standard of review to be used by appellate courts in reviewing a trial court's order on a motion to suppress evidence obtained through a

---

1. The Court of Criminal Appeals has stated that the language of Art. I, § 9 of the Texas Constitution is virtually identical to the language of the Fourth Amendment. *Johnson v. State*, 912 S.W.2d 227, 233 (Tex.Crim.App. 1995). In *Johnson*, the Court concluded that the framers of the Texas Constitution chose to draft Art. I, § 9 to protect Texas citizens from unreasonable searches and seizures by the state in the same way they were protected from unreasonable searches and seizures by the federal government under the Fourth Amendment. *Id.* at 233–34. However, the Court emphasized that our court and other appellate courts may decide to raise the "ceiling of freedom of Texas citizens from unrea- sonable searches and seizures," by choosing in individual cases to interpret Art. I, § 9 in a manner justified by the facts of the case, state precedent on the issue, and state policy considerations. *Id.* at 234. Although Morris attacks the validity of the search warrant on federal and state constitutional grounds, he did not "carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground." *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991). More importantly, Morris does not argue that his individual case is one in which we should raise the "ceiling of freedom" of Texas citizens under Art. I, § 9.

search incident to a warrantless arrest. 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997). In *Loserth v. State*, the Court stated that *Guzman* applies to all motions to suppress evidence based upon Fourth Amendment claims as well as other claims. 963 S.W.2d 770, 771 (Tex.Crim.App.1998). Here, we are called upon to review a trial court's decision on a motion to suppress evidence based on a claim that the search warrant was not supported by probable cause.

In *Guzman*, the Court explained that the standard of appellate review depends on the type of question presented. It recognized three types of questions: (1) historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor; (2) application of law to fact questions, *i.e.*, mixed questions of law and fact, when the ultimate resolution of those questions turns on an evaluation of credibility and demeanor; and (3) mixed questions of law and fact when the resolution of those questions does not turn on an evaluation of credibility and demeanor. *Loserth*, 963 S.W.2d at 772; *Guzman*, 955 S.W.2d at 89.

■ Whether probable cause exists to support the issuance of a search warrant is determined from the "four corners" of the affidavit alone. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.Crim.App.1996). Statements made during the pre-trial hearing on the motion to suppress do not factor into that determination. *Id.* Thus, in Morris's case we are reviewing the third type of question, where the resolution of the issue does not turn on an evaluation of credibility and demeanor. According to *Guzman*, when an appellate court reviews this type of question, it is in as good a position as the trial court to resolve the issue, and therefore determines the issue independently, or *de novo*. 955 S.W.2d at 89. That is, we apply the same standard

that the trial court applied when it evaluated the magistrate's decision to issue the search warrant on the basis of the affidavit. *Burke v. State*, 27 S.W.3d 651, 654 (Tex.App.—Waco 2000, pet. ref'd); *Lane v. State*, 971 S.W.2d 748, 752 (Tex.App.—Dallas 1998, pet. ref'd).

■ In determining *de novo* the issue before the trial court, we do not, however, determine independently, or *de novo*, if there was probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The United States Supreme Court strictly prohibits such after-the-fact, *de novo* scrutiny. *Id.* Instead, we give great deference to the magistrate's decision to issue the warrant and determine whether, considering the totality of the circumstances, the magistrate had a "substantial basis for concluding probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332. This deferential standard of review of a magistrate's probable-cause determination promotes the United States Supreme Court's stated policy of preserving the incentive to peace officers to obtain a warrant instead of conducting warrantless searches. *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

## Probable Cause For A Search Warrant

■ A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause. Tex.Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp.2001). Among other requirements, the facts asserted in the affidavit must be sufficient to show "that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place or thing to be searched." *Id.* 18.01(c)(3); *Massey*, 933 S.W.2d at 148. The allegations are sufficient if they would justify a conclusion that the items to be

searched for are probably on the premises. *Ramos v. State,* 934 S.W.2d 358, 363 (Tex. Crim.App.1996).

■ Moreover, the facts relied on must not have become "stale" by the time the warrant is issued. *Rowell v. State,* 14 S.W.3d 806, 809–10 (Tex.App.—Houston [1st Dist.] 2000, pet. granted); *Wachter v. State,* 961 S.W.2d 598, 600 (Tex.App.—San Antonio 1997, pet. ref'd). That is, the affidavit must show that the act or event upon which probable cause is based occurred within a reasonable time prior to the making of the affidavit. *Howlett v. State,* 946 S.W.2d 870, 879 (Tex.App.— Eastland 1997), *rev'd on other grounds,* 994 S.W.2d 663 (Tex.Crim.App.1999) (citing *Gonzales v. State,* 577 S.W.2d 226 (Tex. Crim.App.1979)).

### Sufficiency Of The Affidavit

■ The information with which the magistrate is supplied may be hearsay. *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Castillo v. State,* 739 S.W.2d 280, 291 (Tex.Crim.App. 1987). In the affidavit, the magistrate was provided hearsay information since Ebarb was restating what Sandy Graham told him in an interview. Ebarb states in the affidavit, in part[2]:

> ... I have good reason to believe and do believe that ... Jonathan W. Morris did then and there intentionally and knowingly possess material containing a film or other media image, which visually depicted, and which the defendant knew visually depicted, a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, or lewd exhibition of

the genitals in violation of the Texas Penal Code.

\* \* \*

My belief in the foregoing is based on the following: On April 7, 2000, Mr. Davis Suriff, a loss prevention officer with Wal–Mart Stores, Inc., gave a statement to Affiant that an ex-employee of Wal–Mart, Sandy Graham, knew about some child pornography in the possession of Jonathon W. Morris who resides at 516 State School rd. in Gatesville, Coryell County, Texas. Affiant also was told by Mr. Suriff that another Wal–Mart employee, Michael Blakely told him that he, Blakely, had heard that Jonathon Morris had photographs of nude children on his computer at 516 State School rd.

Affiant obtained a statement from Sandy Graham on April 7, 2000, in which Mr. Graham said that about the end of February, 2000, he saw photographs of nude children on Mr. Jonathon Morris's computer and that some of the photographs were dated as November and December 1999 and January 2000. Mr. Graham said these were not photographs of any children belonging or related to Mr. Morris. Mr. Morris also told and showed Mr. Graham photographs of nude children that he, Mr. Morris, had "downloaded" off the Internet to his computer. Mr. Graham also said that he recognized two of the nude photographs as being children he believes to be under 17 years of age and as young as 11 years of age who are from Gatesville. Mr. Morris also told Mr. Graham as late as March of 2000 told him that he had some more photographs that he "downloaded". Mr. Graham believes that these downloaded photographs are also of nude children. Mr.

---

**2.** The excerpts from the affidavit are presented verbatim, including errors.

Graham said he has seen that Mr. Morris has hundreds of these pornographic pictures of children on his computer under password protected files.

### a. Sufficient Facts

 In determining whether a search warrant is based on probable cause, the affidavit is interpreted in a common-sense, realistic manner; hypertechnical analysis should be avoided. *Upton,* 466 U.S. at 732, 104 S.Ct. at 2087; *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App.1991). Morris contends that the affidavit does not establish that Morris possessed child pornography in his home, because the informant said the photographs are of "nude children" and does not further state that these "nude children" are engaging in sexual activities. Furthermore, Morris argues that the informant merely concludes that Morris is in possession of child pornography instead of providing the magistrate with facts that would support such a conclusion. We disagree with his interpretation. We find his contentions to be based on a "hypertechnical" analysis of the affidavit.

The affidavit states that Graham told Ebarb that near the end of February 2000 he saw photographs of nude children on Morris's home computer. Furthermore, Graham said that the children in the photographs were not children belonging to or related to Morris. Graham also stated that he recognized two of the children in the photographs as being from Gatesville and that he believed one of the children was under 17 years old and the other was under 11 years old. Finally, Graham stated that he had "seen that Mr. Morris has hundreds of these pornographic pictures of children on his computer under password protected files." In reviewing the totality of the circumstances as stated in the affidavit, we believe that the magistrate had a substantial basis for concluding that Morris was in possession of child pornography on his home computer.

### b. Stale Information

Morris also complains that the information in the affidavit is "stale" because one month had elapsed between the time Graham stated that he last saw Morris in possession of the photographs and the time the warrant was issued. In determining probable cause, the magistrate is required to rely on information that is not stale. *Rowell,* 14 S.W.3d at 809–10; *Wachter,* 961 S.W.2d at 600. We reiterate that the standard of review prohibits us from reviewing the probable cause issue independently from the magistrate's determination that probable cause existed. The purpose of our review is to determine whether under the totality of the circumstances the magistrate had a "substantial basis" for concluding that probable cause existed. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332.

 The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Rowell,* 14 S.W.3d at 809. When the affidavit recites facts indicating activity of a protracted and continuous nature, *i.e.,* a course of conduct, the passage of time becomes less significant. *Id.*

 The affidavit recited facts that Morris possessed child pornography for a sustained period of time. Graham alleged that he saw photographs that were dated November and December 1999, and January 2000. Graham stated that in March 2000 Morris told him that he had "downloaded" more photographs of nude children off the Internet. Based on Graham's

statements, the magistrate could have reasonably inferred that Morris had child pornography in his possession for a substantial period of time, *i.e.*, from November 1999 to March 2000. Thus, these facts indicate that Morris engaged in criminal "activity of a protracted and continuous nature," making the passage of time between the last time Graham saw Morris in possession of child pornography (near the end of February 2000) and the issuance of the warrant (April 7, 2000) less significant. *Id.*

Furthermore in *Burke*, the information in the affidavit supplied by an informant stated that the defendant "keeps nude photos on his dark gray laptop computer," and we concluded that this statement indicated the continuing and recent presence of pornography; therefore, the information was not stale. 27 S.W.3d at 655. Graham said that Morris has "hundreds of these pornographic pictures of children on his computer under password protected files." As in *Burke*, Graham's statement indicates Morris's continuing possession of child pornography.

We conclude that the magistrate could have reasonably inferred that the information in the affidavit was not stale. The Court of Criminal Appeals has stated that the issuing magistrate is permitted to draw reasonable inferences from the facts stated in the affidavit, and we, as a reviewing court, are required to accord those inferences great deference. *Ramos*, 934 S.W.2d at 363.

### c. Graham's Prior Reliability

 Finally, we address Morris's contention that Ebarb was required to provide the magistrate with information in the affidavit that established Graham's prior reliability as an informant. The reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making his probable cause determination. *Johnson v. State*, 803 S.W.2d 272, 289 (Tex.Crim.App.1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). A magistrate is entitled to rely on information supplied by a private citizen, since, unlike many police informants, they are much less likely to produce false or untrustworthy information. *Id.*

 It is clear that the affidavit does not set forth facts that establish Graham's prior reliability in providing credible information to the police. However, the failure to allege prior reliability is not necessarily a fatal defect in the affidavit. *Doescher v. State*, 578 S.W.2d 385, 388 (Tex.Crim.App. [Panel Op.] 1978). The Court of Criminal Appeals has consistently stated that when a named informant is a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent. *Johnson*, 803 S.W.2d at 289; *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex.Crim.App.1982) (citing *Wood v. State*, 573 S.W.2d 207, n. 2 (Tex.Crim.App.1978)); *Frazier v. State*, 480 S.W.2d 375, 379 (Tex. Crim.App.1972).

 Graham is a private citizen who furnished Detective Ebarb with information about Morris's possession of child pornography. The fact that Graham was a private citizen who came forward with detailed information about the commission of a crime and allowed the police to name him in the affidavit carries an indicia of reliability. *Id.* But Morris further complains that the affidavit failed to make the magistrate aware of the fact that Graham offered the information when he was being questioned about stealing from his employer. Morris believes this omission should have been

included to aid the magistrate in assessing Graham's reliability.

The Dallas court of appeals has held that the omission of information about an informant's criminal record and a "deal" to supply information for the dismissal of pending charges from the affidavit does not render a search warrant invalid. *Heitman v. State*, 789 S.W.2d 607, 612 (Tex. App.—Dallas 1990, pet. ref'd). Here, Graham had been accused of a crime. If as in *Heitman*, an omission in the affidavit of the informant's *criminal record* does not invalidate the search warrant, then we conclude that the omission of the fact that an informant has been *accused of a crime* does not invalidate the warrant. The Austin court of appeals held that the affiant's omission that an informer may have been in custody when he gave information was not sufficient to defeat probable cause shown by the remainder of the affidavit. *Hackleman v. State*, 919 S.W.2d 440, 449 (Tex.App.—Austin 1996, pet. ref'd, untimely filed). Accordingly, we disagree with Morris that the omission in the affidavit of the fact that Graham had been questioned by his employer about stealing would have affected the magistrate's determination of probable cause.

## CONCLUSION

We conclude that the facts and circumstances submitted to the magistrate within the "four corners" of the affidavit provide a "substantial basis" for the magistrate's conclusion that child pornography would probably be found at Morris's residence at the time the warrant was issued, and therefore, the affidavit was sufficient to establish probable cause. Finding that the trial court did not err in denying Morris's motion to suppress, we overrule his sole point of error and affirm the judgment.