IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00030-CR

 

Roger Lee Sanders,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the Criminal District Court
3

Tarrant County, Texas

Trial Court No. 0940303R

 



O p i n i o n



 








          Appellant Roger Sanders was sentenced
to life in prison after his conviction on ten counts of aggravated sexual
assault of a child under the age of fourteen.  Sanders appeals, asserting four issues. 
We will affirm.

Background

          C., Sanders’s former stepdaughter,
testified that Sanders began sexually abusing her in the fall of 1999, when C.
was eleven.  Sometimes during the abuse, Sanders made C. look at child
pornography on his computer or at pornographic movies.  The abuse continued
until 2002, when the marriage between C.’s mother and Sanders ended in
separation and divorce.  After C. reported the abuse, police obtained and
executed a search warrant at Sanders’s apartment, seizing a computer and
various disks containing a large amount of child pornography.

Jury Argument

          In his first issue, Sanders complains
of the State’s rebuttal jury argument during guilt-innocence.  The prosecutor
first argued:  “If you want to find [Sanders] not guilty, you need to be
prepared to tell that girl to her face you believe her to be a liar.”  Sanders
objected to that argument as outside the record, and the trial court sustained
the objection and instructed the jury to disregard it.

          The prosecutor then argued, over
Sanders’s objections that it was outside the record and outside the scope of
the law, the following:

If you find this gentleman not guilty, then you
are saying that [C.] is a liar, and that is not the case.

 

Not guilty would mean that [C.] has lied to you,
and that is not what the evidence shows in this case.

 

          The trial court overruled the objections,
and after the jury retired, Sanders’s motion for mistrial was denied.  On
appeal, Sanders asserts that the jury argument was improper, complaining that
the argument was designed to inflame the jury and to bolster the victim’s
credibility.

Jury argument is limited to: (1) summation of
the evidence; (2) reasonable deduction from the evidence; (3) answers to
argument of opposing counsel; or (4) a plea for law enforcement.  Guidry v.
State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Sandoval v. State,
52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  To
determine whether a party’s argument properly falls within one of these
categories, we must consider the argument in light of the entire record.  Sandoval,
52 S.W.3d at 857.

          It is improper for a prosecutor to
bolster the victim’s testimony by injecting the prosecutor’s personal opinion
about the victim’s honesty and truthfulness.  Flores v. State,
778 S.W.2d 526, 528 (Tex. App.—Corpus Christi 1989, no pet.) (citing Menefee
v. State, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (“I don't believe I
have ever seen anybody that I thought was any more honest than she is” held to
be improper argument), citing Puckett v. State, 168 Tex. Crim. 615, 330
S.W.2d 465 (Tex. Crim. App. 1959) (“I'm telling you that they are telling the
truth” held to be improper argument, requiring reversal)).  But the arguments
at issue were not bolstering the victim’s credibility; they were a reasonable
deduction from the evidence on the credibility issues in the case.  See Loar
v. State, 627 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1981) (upholding
propriety of “And if you want to acquit, then you have to believe that the
three police officers got together and lied about everything.”).  Additionally,
the prosecutor’s arguments were in response to defense counsel’s arguments
attacking C.’s credibility, which was one of the main themes of the defense
argument.  As a response to the defense argument, the prosecutor’s rebuttal was
proper.  E.g., Wylie v. State, 908 S.W.2d 307, 310 (Tex. App.—San Antonio 1995, pet. ref’d); see also Lange v. State, 57 S.W.3d 458, 467-69 (Tex. App.—Amarillo 2001, pet. ref’d).  We overrule the first issue.

Extraneous-Offense Evidence

          Sanders’s second issue complains of
the admission of extraneous-offense evidence (alleged child pornography),
claiming:  (1) the State did not timely inform Sanders of its intent to use
evidence that he possessed child pornography; (2) the trial court erred in
denying his motion for continuance to examine the evidence; and (3) the trial
court erred by admitting the photographs at the punishment stage after finding
them inadmissible during guilt-innocence.        

          The State gave notice of its intent to
offer extraneous-offense evidence on November 19, 2004, about eleven days
before jury selection began.  The State filed an amended notice on November 23,
about two weeks before the punishment phase (when the evidence at issue was
actually admitted).  Sanders had filed a motion for discovery that included a
request that the trial court order the State to give reasonable pretrial notice
of its intent to offer extraneous-offense evidence, but the trial court did not
rule on this request.  

          We review the trial court’s admission
of extraneous-offense evidence for abuse of discretion.  Moses v. State,
105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  On the defendant’s timely request
to the attorney for the State, notice of intent to introduce extraneous-offense
evidence must be given by State in the same manner required by Rule of Evidence
404(b).  Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g) (Vernon Supp. 2005).  A defendant’s motion requesting the
court to order the State to provide notice of intent to present
extraneous-offense evidence is insufficient to trigger the notice requirement
of article 37.07.  Mitchell v. State, 982 S.W.2d 425, 427 (Tex. Crim. App.
1998); see also Simpson v. State, 991 S.W.2d 798, 801 (Tex. Crim. App. 1998)
(holding defendant’s motion requesting the court to order the State to provide
notice of intent to offer extraneous-offense evidence insufficient to trigger
notice requirement); Espinosa v. State, 853 S.W.2d 36, 39 (Tex. Crim. App.
1993) (“when a defendant relies on a motion for discovery to request notice
pursuant to Rule 404(b), it is incumbent upon him to secure a ruling on his
motion in order to trigger the notice requirements of that rule.”).  Because
Sanders neither made a request for notice nor secured a ruling on his motion for
an order to the State to provide notice, the trial court did not abuse its
discretion in admitting the extraneous-offense evidence over Sanders’s
untimely-notice objection.

          Sanders next complains that the trial
court abused its discretion in denying his motion for continuance (filed on
November 24), contending that a continuance was necessary so his trial counsel
could review the “voluminous” extraneous-offense material.  The motion was
premised on the State’s alleged untimely notice of intent to introduce extraneous-offense
evidence, which created the need for a continuance.  We review a denial of a
motion for continuance for abuse of discretion.  Duhamel v. State, 717
S.W.2d 80, 83 (Tex. Crim. App. 1996).  We have held above that Sanders did not
make a request for such notice; thus, the trial court did not abuse its discretion
in denying the motion for continuance.

          The trial court ruled that the child
pornography extraneous-offense evidence was inadmissible during guilt-innocence
but allowed it during punishment.  Sanders asserts that admission was error
because the trial court should not be allowed to make such a reversal of
position.  Sanders cites no authority on point, referring generally to
doctrines such as stare decisis, law of the case, and collateral estoppel.  But
as the State points out, extraneous-offense evidence admitted during punishment
serves a different purpose from evidence admitted during guilt-innocence.  Compare
Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a)(1) (Vernon Supp. 2005) (character evidence, including prior acts
demonstrating that character, admissible at punishment stage) with Tex.
R. Evid. 404(b) (extraneous acts generally not admissible to show defendant’s
character).  The trial court did not err in allowing the child pornography
evidence during punishment.  For all the above reasons, we overrule Sanders’s
second issue.

Expert Testimony

          In his third issue, Sanders complains
of the trial court’s admission of expert testimony from Jessie Lee, the State’s
forensic computer examiner who recovered the child pornography from computer
media found in Sanders’s apartment.  Sanders asserts that the State failed to
show that the testimony was sufficiently reliable.  We review the trial court’s
admission of expert testimony for an abuse of discretion.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

To be reliable, evidence derived from a
scientific theory must satisfy three criteria:  (a) the underlying scientific
theory must be valid; (b) the technique applying the principle must be valid; and
(c) the technique must have been properly applied on the particular occasion.  Kelly
v. State, 824 S.W.2d 568, 573 (Tex Crim. App. 1992).  Factors affecting the
trial court’s proper determination of these three criteria include, but are not
limited to:  (1) the extent to which the underlying scientific theory and
technique are accepted as valid by the relevant scientific community, if such
community can be ascertained; (2) the qualifications of any expert testifying;
(3) the existence of literature supporting or rejecting the underlying scientific
theory and technique; (4) the potential rate of error of the technique; (5) the
availability of other experts to test and evaluate the technique; (6) the
clarity with which the underlying scientific theory and technique can be
explained to the court; and (7) the experience and skill of any person who
applied the technique on the occasion in question.  Id.

   Lee, a certified peace officer and criminal
investigator for the district attorney for four years, said that he performs
computer forensic analysis daily.  He had over 600 hours of training in his
field, had attended various training programs in his field, and, at the time of
trial, was certified by the International Association of Computer Investigation
Specialists.  His training included software programs like EnCase and Forensic
Toolkit.  EnCase is a “field standard” for forensic computer examination;
treatises about EnCase have been published.

Lee explained that when he takes a hard drive
from a computer, he uses a program like EnCase to automate the task of
searching and finding the files on it.  An image of the drive is taken; the
files are copied, and EnCase validates the copy by an “MD5 hash,” a 128-bit
algorithm that verifies the image.  The MD5 hash is essentially a “digital
fingerprint” of a drive, and if the hash values match, Lee said that “basically
there’s no chance” that an error occurred in making an exact duplicate of the
original computer file.

Lee used EnCase on computer files taken from
Sanders’s computer.  EnCase indexed the files, and Sanders was able to retrieve
deleted files containing child pornography from Sanders’s computer.  We find
that the trial court did not abuse its discretion in admitting Lee’s testimony
and the evidence from Sanders’s computer in the punishment phase.  See Williford
v. State, 127 S.W.3d 309, 312-13 (Tex. App.—Eastland 2004, pet. ref’d)
(finding similar testimony about EnCase reliable in child pornography case).[1] 
We overrule Sanders’s third issue.

Search and Seizure

The fourth issue asserts that the trial court
erred in denying Sanders’s motion to suppress the results (the computer media
containing child pornography) of the search of Sanders’s apartment.  Sanders
argues that the affidavit used to obtain the search warrant failed to
demonstrate probable cause that the items sought were at the apartment.

          We have previously articulated the
standard of review of a trial court’s denial of a motion to suppress where the
warrant allegedly was not supported by probable cause:

Whether probable cause exists to support the
issuance of a search warrant is determined from the “four corners” of the
affidavit alone.  Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).
. . .  According to Guzman [v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997)], when an appellate court reviews this type of question [mixed questions
of law and fact when the resolution of those questions does not turn on an
evaluation of credibility and demeanor], it is in as good a position as the
trial court to resolve the issue, and therefore determines the issue
independently, or de novo.  955 S.W.2d at 89.  That is, we apply the same
standard that the trial court applied when it evaluated the magistrate’s
decision to issue the search warrant on the basis of the affidavit.  Burke
v. State, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref’d); Lane v.
State, 971 S.W.2d 748, 752 (Tex. App.—Dallas 1998, pet. ref'd).

 

In determining de novo the issue before the
trial court, we do not, however, determine independently, or de novo, if there
was probable cause.  Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).  The United States Supreme Court
strictly prohibits such after-the-fact, de novo scrutiny.  Id.  Instead,
we give great deference to the magistrate’s decision to issue the warrant and
determine whether, considering the totality of the circumstances, the
magistrate had a “substantial basis for concluding probable cause existed.”  Id. at 238-39, 103 S.Ct. at 2332.  This deferential standard of review of a
magistrate’s probable-cause determination promotes the United States Supreme
Court’s stated policy of preserving the incentive to peace officers to obtain a
warrant instead of conducting warrantless searches.  Massachusetts v.
Upton, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

 

Morris v. State, 62 S.W.3d 817, 821 (Tex. App.—Waco 2001, no
pet.).

 

A request for a warrant must be supported by a
sworn affidavit that sets out facts sufficient to support a finding of probable
cause.  Tex. Code Crim. Proc. Ann.
art. 18.01(b) (Vernon 2005).  Among other requirements, the facts asserted in
the affidavit must be sufficient to show “that the property or items
constituting evidence to be searched for or seized are located at or on the
particular person, place or thing to be searched.”  Id. art. 18.01(c)(3);
Massey, 933 S.W.2d at 148.  The allegations are sufficient if they would
justify a conclusion that the items to be searched for are probably on the
premises.  Ramos v. State, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996).

The affiant, Detective Carrol Starkey of the
Tarrant County Sheriff’s Department, stated in her February 2003 affidavit that
she investigates physical and sexual abuse of children and has training in
investigating child sexual exploitation.  Through her training and experience,
she has learned that child sexual abusers collect child pornography, which they
usually cherish and keep in a secure place, such as a residence, to avoid
detection by law enforcement.  Starkey interviewed C., who told her that Sanders
had sexually abused her and made her look at child pornography on his
computer.  Starkey also spoke with C.’s mother, who said that when Sanders
moved out in August 2002, he took all the computers but later returned two,
keeping at least one that Sanders still had in his apartment.

Sanders asserts that the information supporting
the warrant was stale.  In determining probable cause, the magistrate is
required to rely on information that is not stale.  Morris, 62 S.W.3d at
823.  The proper method to determine whether the facts supporting a search
warrant have become stale is to examine, in light of the type of criminal
activity involved, the time elapsing between the occurrence of the events set
out in the affidavit and the time the search warrant was issued.  Id.  When the affidavit recites facts indicating activity of a protracted and
continuous nature, i.e., a course of conduct, the passage of time
becomes less significant.  Id.

C. told Starkey that she was shown child
pornography on Sanders’s computer in March 2001 and that she had last seen it
in September 2001.  C.’s mother told Starkey on January 31, 2003 that Sanders
still had at least one of the computers that had been in the Sanders residence,
and Sanders had taken it when he moved out in August 2002.  Starkey’s affidavit
contained ample information—including Starkey’s statement that child
pornography is “usually kept and cherished, and rarely thrown away”—from which
the magistrate had a “substantial basis” under
the totality of the circumstances for concluding that probable cause existed
that the computer and related storage devices were kept in Sanders’s apartment
and contained child pornography.  See id. at 823-24; Burke, 27
S.W.3d at 655.  The magistrate could have reasonably inferred that the information
in the affidavit was not stale, and we accord that reasonable inference great
deference.  Morris, 62 S.W.3d at 824 (citing Ramos, 934 S.W.2d at
363).  We conclude that the facts and circumstances submitted to the magistrate
within the “four corners” of Starkey’s affidavit provide a “substantial basis”
for the magistrate’s conclusion that child pornography would probably be found
at Sanders’s apartment at the time the warrant was issued, and therefore, the
affidavit was sufficient to establish probable cause.  Sanders’s fourth issue
is overruled.

Conclusion

          

Having overruled all of Sanders’s issues, we
affirm the trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed March 8, 2006

Publish


[CRPM]









    [1]       In
Williford, the court stated:

 

We find that Detective Owings’s testimony
satisfied the Kelly criteria for reliability.  Detective Owings provided
testimony on each of the seven factors identified in Kelly.  Detective
Owings is the computer expert for the Brownwood Police Department and is
knowledgeable about EnCase.  He testified that EnCase is generally accepted in
the computer forensic investigation community, that EnCase is used worldwide,
that he knew how to use EnCase, that he knew how EnCase worked, that he had
successfully used EnCase in the past, that EnCase can be tested by anyone
because it was commercially available and anyone could purchase it, that EnCase
has been tested, that there have been several articles written about EnCase and
other computer forensic software programs, that SC Magazine gave EnCase an
overall five-star rating out of five stars, that EnCase has a low potential rate
of error, that he successfully copied appellant’s hard drive by using EnCase,
and that EnCase verified that he had successfully copied appellant’s hard
drive.  Detective Owings described in detail for the trial court how EnCase
worked.  Detective Owings’s testimony established EnCase’s reliability.  The
trial court did not abuse its discretion. . . .

 

127 S.W.3d at 312-13; see also Hernandez v. State, 116
S.W.3d 26, 28-29 (Tex. Crim. App. 2003 (“once some courts have, through a Daubert/Kelly
“gatekeeping” hearing, determined the scientific reliability and validity of a
specific methodology to implement or test the particular scientific theory,
other courts may take judicial notice of the reliability (or unreliability) of
that particular methodology.”).