Robyn BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–02–084–CR.

Court of Appeals of Texas,
Waco.

July 30, 2003.

Craig M. Greaves, Bryan, Stacy & Dillard, L.L.P., Bryan, for Appellant.

Linda F. Stutt, Robertson County Asst. District Attorney, Franklin, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

After the trial court denied her motion to suppress, Robyn Brown pled guilty to possession of a controlled substance. The trial court deferred the adjudication of Brown's guilt and placed her on communi-

ty supervision for three years. Brown appeals the denial of her motion to suppress. We reverse.

## BACKGROUND

Investigators Travis Higgenbotham and Shane Bush of the Brazos Valley Narcotics Trafficking Task Force conducted investigations of people who had purchased iodine crystals from a local feed store. Although commonly used as a medication for livestock, iodine crystals are also used in the process of producing methamphetamine. The investigators noticed that Brown purchased two 4–ounce packages of iodine crystals in June of 2001 and the same amount two months later. When attempting to locate Brown, the investigators discovered she had moved and now lived with Todd Radke. The current resident at Brown's former address, Stephanie Torres, told Investigator Bush that she knew Brown and that she believed Brown and Radke were producing methamphetamine. She gave the investigators directions to Brown's current residence.

Once at the current residence, the investigators noticed a light blue Accura with temporary tags parked in the driveway. They then positioned themselves at the end of the road to wait for another investigator. Before his arrival, the Accura left Brown's residence. The investigators followed the vehicle. When the investigators observed a traffic violation, they called Deputy Paul Martinez to stop the vehicle. The occupants of the vehicle were James Roberts and Kevin Bittle. Deputy Martinez noticed marijuana on the console between the driver, Roberts, and the passenger, Bittle. Both also had outstanding warrants. While attempting to search Roberts, officers noticed that he had something in his mouth. They retrieved three "good sized" bags of methamphetamine from Roberts's mouth. He was trying to

swallow them. Investigator Bush suspected that the methamphetamine came from Brown's residence.

Based on the investigation and the incident with Roberts, the investigators obtained a search warrant of Brown's current residence for methamphetamine. The search warrant was executed at about 1:00 a.m. A group of task force officers attempted to gain entry of the residence by using a halogen tool and a sledgehammer. The task force was unable to forcibly open the door, and while still attempting the entry, Radke opened the door. Radke and Brown were ultimately arrested.

Brown filed a motion to suppress the evidence seized under the search warrant. The trial court denied the motion.

## MOTION TO SUPPRESS

 A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). As a general rule, the appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The appellate courts should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* We may review de novo "mixed questions of law and fact" not falling within this category. *Id.* The application of relevant law, including search and seizure law, is reviewed de novo. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000).

### STANDING

In her first issue, Brown contends the trial court was correct in determining she had standing to contest the search and seizure of evidence at the residence she shared with Radke. The trial court determined she had standing and the State does not contest this ruling. To complain on appeal, the party must have suffered an adverse ruling. Brown has suffered no adverse ruling. This issue presents nothing for review and is dismissed.

### SEARCH WARRANT

In her second issue, Brown contends the trial court erred in denying her motion to suppress because the court erred in finding that the search warrant affidavit contained sufficient information to establish probable cause for the issuance of a search warrant. Specifically, she complains that the purchase of iodine crystals, by itself, was not sufficient probable cause; the information received from Torres was not shown to be reliable; and the discovery of the contraband in the vehicle detained after leaving the residence, by itself, did not establish probable cause.

#### APPLICABLE LAW

Whether probable cause exists to support the issuance of a search warrant is determined from the "four corners" of the affidavit alone. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.Crim.App.1996); *Morris v. State*, 62 S.W.3d 817, 821 (Tex. App.-Waco 2001, no pet.). Statements made during the pre-trial hearing on the motion to suppress do not factor into that determination. *Id.* Because probable cause to support the issuance of the warrant is determined from the "four corners" of the affidavit alone, we review the court's ruling on the motion to suppress *de novo*. *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.-Waco 2000, pet. ref'd). That is, we apply the same standard that the trial court applied when it evaluated the magis-

trate's decision to issue the search warrant on the basis of the challenged affidavit. *Id.*

In determining *de novo* the issue before the trial court, we do not, however, determine independently, or *de novo*, if there was probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Morris*, 62 S.W.3d at 821. The United States Supreme Court strictly prohibits such after-the-fact, *de novo* scrutiny. *Id.* Instead, we give great deference to the magistrate's decision to issue the warrant and determine whether, considering the totality of the circumstances, the magistrate had a "substantial basis for concluding probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317; *Morris*, 62 S.W.3d at 821. This deferential standard of review of a magistrate's probable-cause determination promotes the United States Supreme Court's stated policy of preserving the incentive to peace officers to obtain a warrant instead of conducting warrantless searches. *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Morris*, 62 S.W.3d at 821.

A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause. TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp.2003). The information with which the magistrate is supplied may be hearsay. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds*, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Castillo v. State*, 739 S.W.2d 280, 291 (Tex.Crim.App.1987).

In determining whether a search warrant is based on probable cause, the affidavit is interpreted in a common-sense, realistic manner; hyper-tech-

nical analysis should be avoided. *Upton,* 466 U.S. at 732, 104 S.Ct. 2085; *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App. 1991); *Morris,* 62 S.W.3d at 823. The reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making his probable cause determination. *Johnson v. State,* 803 S.W.2d 272, 289 (Tex.Crim.App.1990), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). A magistrate is entitled to rely on information supplied by a private citizen, since, unlike many police informants, they are much less likely to produce false or untrustworthy information. *Id.; Morris,* 62 S.W.3d at 824.

### FACTS

The affiant for the search warrant affidavit was Phil Crowell, an investigator with the Robertson County Sheriff's Department. Through the affidavit, he informed the magistrate of the following:

Brown had twice purchased two containers of iodine crystals from a local feed store. Although the crystals are commonly used to medicate the hooves of horses, they are also used in the reduction process of cooking methamphetamine.

Investigators went to Brown's last known address and spoke to Stephanie Torres. Torres stated that Brown no longer lived at the address but now lived at the last trailer house on the right on Oakridge Drive in Robertson County. Torres also informed the investigators that Brown now lived with Todd Radke and that she heard Brown had been cooking methamphetamine.

When the investigators arrived at the trailer house on Oakridge Drive, they observed a light blue vehicle with temporary tags parked at the end of the driveway. No one was inside the vehicle or outside the residence. The investigators positioned themselves at the end of Oakridge Drive to wait for Crowell, the affiant. While they were waiting, they saw the light blue vehicle travel down Oakridge Drive to Jack Rabbit Lane. The investigators followed the vehicle. When the driver of the vehicle committed a traffic violation, the vehicle was stopped. A usable amount of marijuana was observed on the consol between the driver and the passenger. The driver, James Roberts, had outstanding warrants for three motions to revoke probation. The passenger, Kevin Bittle, had an outstanding parole warrant. While conducting a pat-down search of Roberts, officers noticed something in his mouth that he was trying to swallow. They retrieved three packages, one of which was tested and resulted in a positive test for methamphetamine. A small glass vile containing an off-white powder substance was also located behind the driver's seat.

### APPLICATION

██ The purchase of the iodine crystals, the information provided by Torres, and the seizure of methamphetamine from a vehicle that had just been seen where Brown resided, individually, may not support probable cause. But we do not review these incidents in isolation. And we do not exclude Torres's information because the magistrate was entitled to rely on the information she gave. Taken together, the magistrate had a substantial basis for concluding probable cause existed to search the residence on Oakridge Drive. Thus, the affidavit is sufficient. The trial court did not err, and Brown's second issue is overruled.

### *"NO-KNOCK" ENTRY*

In her third issue, Brown contends that the trial court erred in concluding that the officers' entry into her residence did not violate the "knock and announce" rule.

Specifically, she contends that there was no evidence that a "no-knock" entry was necessary due to the threat of violence or the destruction of evidence. We agree.

*APPLICABLE LAW*

█ The common law requires police to knock and announce their presence and purpose prior to entering a home to search and/or arrest. The announcement must be made before any attempt at forcible entry. *See Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *United States v. Cantu*, 230 F.3d 148, 151–152 (5th Cir.2000).

In 1995, the United States Supreme Court, for the first time, held that the common law "knock and announce" rule forms a part of the reasonableness inquiry of a search and seizure under the Fourth Amendment of the United States Constitution. *Wilson v. Arkansas*, 514 U.S. 927, 930, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The Fourth Amendment applies to state government officials through the Fourteenth Amendment. In *Wilson*, the police entered the defendant's home by opening a screen door without first announcing their presence. *Id.* at 929, 115 S.Ct. 1914. Once inside, the officers seized marijuana, methamphetamine, valium, narcotics paraphernalia, a gun, and ammunition. *Id.* Although *Wilson* incorporated the knock-and-announce rule into the Fourth Amendment, it left unidentified the circumstances under which the failure to knock and announce would be justified. *Id.* at 936, 115 S.Ct. 1914. This fact intensive question was left to the lower courts. *Id.*

Two years later, the Supreme Court addressed the Wisconsin Supreme Court's conclusion that exigent circumstances justifying a no-knock entry are always present in felony drug cases. *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). In rejecting the Wisconsin court's blanket exception, the Supreme Court adopted a justification, holding:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394, 117 S.Ct. 1416. The court reasoned that "this standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Id.* The reasonable suspicion showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged. *Id.* at 394–395, 117 S.Ct. 1416. Reasonableness is evaluated at the time of the entry. *Id.* at 395, 117 S.Ct. 1416.

*FACTS*

In her motion to suppress, Brown challenged the reasonableness of the officers's no-knock entry. Thus, it was the State's burden to justify the reasonableness of the entry. Of the many officers that participated in the execution of the search warrant, only four testified at the hearing on the motion to suppress. Phil Crowell testified that the warrant was executed at around 1:00 in the morning. He was the third officer in. He recalled that they had trouble getting in the front door and that Radke opened the door for them. Crowell was unsure if anyone announced their presence because that was not his job. He stated that the standard practice is to announce and just go in. He also stated that if they go in unannounced, they do so

because they are worried about the destruction of evidence.

Higgenbotham testified that his primary responsibility during the execution of the search warrant was to wait outside the residence to see if anyone ran from or approached it. He stated that the normal procedure is to knock on the door, advise the occupants of a search warrant and then go in. He did not know if anyone followed this procedure. Shane Bush recalled that they used a "halogen tool" to try to breach the door. Someone on the inside of the residence then opened the door. He stated that some of the officers were saying "police" at about the same time the door was opened. Joe Davis was the officer with the tool to gain entry to the residence. He first tried the door to see if it was locked. It was. He then put the tool in the door, and it was hit with a sledgehammer. He stated he did not announce "police" prior to putting the tool in and having it hit. As the sledgehammer was swung, they announced their presence. He stated that they try to announce as they make entry.

The trial court found that entry to the residence was made without the officers knocking and announcing their purpose prior to the entry in this particular instance. It then concluded that there was sufficient cause to believe that the danger of physical violence to the officers as well as the danger that the evidence would be destroyed justified the entry without first knocking and announcing the officers's purpose.

*APPLICATION*

■ There was simply no testimony from any of the officers at the hearing on the motion to suppress as to the need for a no-knock entry. Additionally, there was no evidence enunciated in the search warrant that would justify a no-knock entry. For example, there was no testimony or evidence that either Brown or Radke were violent or were known to keep weapons in their home; no testimony about the ease of destructibility of methamphetamine; no testimony that Brown or Radke were attempting to destroy any evidence. There was a general statement by one of the officers that if they did not knock and announce, it was because they were concerned about destruction of the evidence. This is not enough. The State had the burden to justify this particular no-knock entry based upon the facts and circumstances of which the officers were aware and failed to carry that burden.

As an alternative argument, the State contends that the entry was made pursuant to the knock and announce rule because Radke opened the door while the officers were attempting to forcibly gain entry and while they were announcing their presence. However, this argument is unpersuasive because the Supreme Court has said that the announcement must be made *before* forcible entry is attempted. *Richards,* 520 U.S. at 387, 117 S.Ct. 1416 (citing *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914). And in this case, forced entry had already been attempted before Radke opened the door for the officers.

Because the State did not provide any evidence which justified a no-knock entry by the task force officers, the trial court properly concluded that the entry was made without knocking and announcing their purpose prior to the attempted entry but erred in concluding the entry was justified. Brown's third issue is sustained.

CONCLUSION

The trial court erred in concluding, on this record, that the task force's no-knock entry into Brown's residence was justified. This cause is reversed and remanded to

the trial court for further proceedings consistent with this opinion.