**Damasio Leija CONDE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–00171–CR.**

Court of Appeals of Texas,
Waco.

April 7, 2004.

Sam R. Fugate, Kingsville, for appellant.

John C. Paschall, Robertson County Dist. Atty., Linda F. Stutt, Robertson County Asst. Dist. Atty., Franklin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA[1].

## MEMORANDUM OPINION

BILL VANCE, Justice.

On January 31, 2000, Officer Hugh Curry, an investigator with a drug task force, was patrolling on the highway in uniform and in a marked police vehicle, performing drug interdiction. After he met Damasio Conde's van, he saw that the light over the

---

1. This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took office on January 5, 2004, participated in the decision.

van's rear license plate was not on, so he pursued Conde and pulled him over. Curry testified that, before the cars stopped, the license-plate light was on, but he stopped Conde anyway because he surmised that the light must have been coming off and on, a violation of the traffic laws.

Curry contacted his dispatcher, got Conde out of the van, and began to make routine inquiries. Curry verified Conde's drivers license and insurance, but learned that the van was not registered to Conde, who explained that he had purchased it for cash one week earlier. Conde produced a sales contract for purchase of the van but said he paid $6,000 for it, although the sales contract stated $4,500. In addition, Conde said he and his wife, who was the passenger, were on a three-week trip from the Mexican border to Arkansas, but Curry saw only two small bags with clothing in the van. Curry also said Conde offered too much unsolicited information. Curry smelled the odor of raw gasoline coming from the van when he first approached it. His further inspection showed a leak around the gas tank and what he described as fresh tool marks on the tank. He also smelled a strong odor of air freshener inside the van. Curry testified he concluded that he had probable cause to seize the van and search it without a warrant because:

> My training, experience and knowing that gas tanks are commonly used to transport illegal drugs, contraband, money from the border states of Texas to other points, the smell of raw gas. There was obviously some reason why the gas tank was leaking. The obvious deception that is being displayed by Mr. Conde and actually the non-questions. The dishonesty to my questions, his demeanor, his physical actions, and the three main factors are obvious fresh tool marks, the smell of the raw gasoline,

obviously had a gas tank with something wrong with it, and his dishonesty [about how much he paid for the van].

Alternatively, Curry testified that Conde gave him consent to search the van at the scene, and later gave consent to seize the van and drop the gas tank and search it. Without a warrant, Curry took the van to a garage where a drug-sniffing dog "alerted" to the van. The gas tank was removed, and inside Curry found 50 pounds of marihuana. Conde and his wife were then arrested.

Conde filed a motion to suppress the evidence, which the trial court denied. A jury found him guilty and assessed punishment at ten years in prison.

### The Issue on Appeal

In a single issue, Conde says the trial court erred in denying his motion to suppress evidence because of: (1) an absence of probable cause for the traffic stop, (2) an absence of reasonable suspicion to temporarily detain him, and (3) the illegality of the seizure of the van and search of the gas tank.

### Standard of Review

We will apply the general rule that "appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Brown v. State*, 115 S.W.3d 633, 635 (Tex.App.-Waco 2003, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)).

### The Traffic Stop

We agree that Curry had a reasonable suspicion of a traffic violation. As we have noted, "When a traffic violation is committed within an officer's view, the offi-

cer may lawfully stop and detain a person for the traffic violation." *Bellard v. State,* 101 S.W.3d 594, 600 (Tex.App.-Waco 2003, pet. ref'd). Also, we find that Curry had reasonable suspicion to temporarily detain Conde for further inquiry after noticing the smell of raw gasoline, observing Conde's demeanor, and learning about the discrepancies in the price of the van and the stated purpose of the trip. *Carmouche v. State,* 10 S.W.3d 323, 328–29 (Tex.Crim. App.2000). Our inquiry, therefore, will focus on (1) whether Conde voluntarily consented to the preliminary search of the van and (2) whether the officer developed probable cause to seize the van, transport it to a garage, and search it further.

### Consent to Search

A voluntary consensual search is an exception to the probable cause and warrant requirements of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. *Reasor v. State,* 12 S.W.3d 813, 817 (Tex. Crim.App.2000). The State has the burden to prove by clear-and-convincing evidence that consent was freely and voluntarily given. *State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim.App.1997). While we defer to the trial court for fact findings, we review *de novo* the legal question of whether consent was voluntary. *Vargas v. State,* 18 S.W.3d 247, 253 (Tex.App.-Waco 2000, pet. ref'd).

■ Consent must not be the product of duress or coercion, express or implied. *Reasor,* 12 S.W.3d at 817 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). It must be positive and unequivocal, and it is not shown by acquiescence to a claim of lawful authority. *Carmouche,* 10 S.W.3d at 331. Whether consent was voluntary is determined from the totality of the circumstances. *Reasor,* 12 S.W.3d at 818.

■ Officer Curry testified that Conde consented to his searching the van. Our review of the videotape shows that Officer Curry had only mild difficulty in communicating with Conde and his wife. It is apparent from the videotape that Conde understood the nature of the request that Curry made to search the van. Giving almost total deference to the trial court's findings, we conclude from a review of the record of the suppression hearing that the trial court could have found by clear-and-convincing evidence that Conde freely and voluntarily consented to the search. *Id.*

Officer Curry's search on the highway did not reveal the presence of drugs, however, and he told Conde that he needed to take the van to a garage and examine it further. Rather than reviewing whether Conde freely and voluntarily consented to moving the van, we will examine whether Curry had probable cause to seize the van for an additional search. *See Cardenas v. State,* 857 S.W.2d 707, 715 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

### Probable Cause to Seize the Van

■ To justify a warrantless search, the State must show that probable cause existed at the time the search was made and the existence of exigent circumstances that made the procurement of a warrant prior to the search impracticable. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App.1991). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead an officer of reasonable prudence to believe that evidence of a crime will be found. *Id.* Courts determine probable cause for a warrantless search by assessing the "totality of the circumstances." *Amos v. State,* 819 S.W.2d 156, 161 (Tex.Crim.App.1991). Officers are permitted to draw logical inferences and make intelligent deductions

from the totality of the circumstances. *Jackson v. State*, 745 S.W.2d 4, 10 (Tex. Crim.App.1988).

Curry testified about facts that led him to believe that evidence of a crime would be found: the smell of raw gasoline when he first approached the van, Conde's statements about the purchase and ownership of the van did not match his paperwork, Conde's demeanor, fresh tool marks on the gasoline tank, the fuel gauge reading that did not match Conde's statement about when and where he had purchased gasoline, and the origin of Conde's trip— the Rio Grande Valley. Based on these facts, we find that a reasonably cautious and prudent officer with Curry's training and experience could have concluded that probable cause existed for a seizure and further search of the van. *See McNairy*, 835 S.W.2d at 106.

### Conclusion

Officer Curry legally stopped Conde and detained him; Conde consented to the initial search of the van on the highway; and probable cause existed for the seizure of the van for further examination. We overrule Conde's issue and affirm the judgment.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Damasio Leija Conde was convicted of possession of marijuana. He was transporting almost 50 pounds of marijuana in the gas tank of his mini-van. The jury assessed his punishment at 10 years in prison. On appeal, he contends the trial court erred in denying his motion to suppress the evidence.

### BACKGROUND

Officer Hugh Curry of the South Central Texas Narcotics Task Force stopped the Dodge mini-van Conde was driving because of a defective license plate light. Conde's wife was a passenger in the vehicle. After smelling raw gasoline and talking with Conde and his wife, Curry suspected Conde of transporting drugs. Curry checked the gas tank of the vehicle and noticed fresh tool marks on the tank. The vehicle was taken to a local mechanics shop. A Task Force drug dog alerted to the vehicle. Conde and his wife were arrested and the gas tank was dismantled. Eighty-six individually wrapped bags of marijuana, totaling 48.74 pounds, were located in the vehicle's gas tank.

### MOTION TO SUPPRESS

Conde filed a motion to suppress the marijuana evidence. The trial court held a hearing and later denied Conde's motion. In one issue, Conde argues that the trial court should have granted his motion to suppress because the initial stop of his vehicle was invalid and, if the initial stop was not invalid, his continued detention was not justified.

At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App.1991). The appropriate standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000) *citing Guzman v. State*, 955 S.W.2d 85 (Tex.Crim. App.1997). In this case, the trial court did not make explicit findings of fact, so we review the evidence in a light most favorable to the trial court's ruling. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002).

*VALID STOP*

Conde first argues that the initial stop for a defective tail light was unlawful. If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop and detain that person. *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.-Texarkana 2000, pet. ref'd) (*citing Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim.App.1992)). It is sufficient to show that the officer reasonably believed that a traffic violation was in progress. *Id.* at 152.

Officer Curry testified at the suppression hearing that when he passed Conde's vehicle, he noticed in his rear view mirror that the light required to illuminate Conde's rear license plate was out. It is a misdemeanor offense if a person operates a vehicle that does not illuminate the rear license plate and does not make the plate clearly legible 50 feet from the rear of the vehicle. TEX. TRANS. CODE ANN. §§ 547.004(a)(2) & 547.322(f) (Vernon 1999). Although the light had come on once Curry stopped Conde and Conde testified that he had just checked his vehicle, it would be reasonable for the trial court to conclude that Curry believed Conde committed a traffic violation. The traffic stop was valid.

*CONTINUED DETENTION*

Conde argues next that if the initial stop was valid, his continued detention was not. If during the course of a valid traffic stop the officer develops a reasonable suspicion that criminal activity is occurring, a continued detention is justified. *Zervos*, 15 S.W.3d at 151. The officer is entitled to rely on all of the information gathered during the course of the stop to develop the articulable facts that would justify a continued detention. *Id; Bustamante v. State*, 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.).

Curry testified at the suppression hearing to many indicators that, to him, would justify a continued detention. When Curry initially approached Conde's vehicle, he could smell a strong odor of raw gas. The odor became stronger as he came closer to the vehicle. Conde told Curry that they had filled up just 6–10 miles earlier, but Curry noticed that the gas gauge registered only half full.

When Curry asked Conde where they were going, Conde stated that they were going to Arkansas and were going to stay about 3–4 weeks. Curry noticed that two small duffle bags were the luggage in Conde's vehicle and stated that it did not match a 3–4 week trip. Curry also testified that Conde rambled and volunteered information without Curry asking any questions. He described this as "filling the void" and as a sign of stress. Curry also noticed other signs of stress: profuse sweating when the night was cool; pushing back of the shoulders; and a change in tone of Conde's voice.

Curry ran a check on Conde's vehicle, and it was not registered to Conde. Conde explained that he had just purchased the vehicle a week earlier with cash. He could not remember, however, where he purchased it and did not tell Curry the correct purchase price that was listed on the sales contract. Curry also testified that Conde was deceptive about his past criminal history. When Curry checked the gas tank at the side of the road, he noticed it was leaking from the top and had fresh tool marks on it. He tapped on it and stated that it did not sound like it should have full or even half-full of gasoline. After the inspection of the gas tank, Curry surmised that the license plate light flickered because the wiring harness was positioned over the top of the gas tank where it was leaking. The wires were saturated with gasoline. Although

Conde testified at the suppression hearing, he did not testify as to any of these abnormalities of which Curry testified.

These facts justified a continued detention.

*VOLUNTARY CONSENT*

Until the last page of his brief, Conde's argument pertains to the two aspects of his stated issue. The issue is stated as follows:

The Trial Court erred in failing to suppress the contraband found as a result of an illegal stop and unreasonable detention.

I have addressed both aspects of this issue already. But on the last page of his brief, and within the argument of this stated issue, Conde adds another complaint: that his consent was involuntary.

It is not entirely clear from the manner in which this argument is briefed if it is intended to be included as a part of the argument under illegal detention or as a second, separate issue. Regardless of how it was intended, I will address the merits of the argument as made.

Conde testified at the suppression hearing that he told the officer it was okay for him to look in the vehicle. The officer testified that he did not initially ask to search Conde's vehicle because Conde volunteered. According to the officer, Conde told the officer he had nothing to hide. At trial, the officer testified that Conde even opened the hatchback of the van for him. The officer also testified that Conde agreed to let him take it to the garage and inspect it.

Conde argues that his consent was not voluntary because the officer asked him how much narcotics was he traveling with. Relying on the Texas Penal Code, Conde argues that this question is a form of coercion. As he interprets section 1.07 of the Penal Code, he believes a person is coerced if he is accused of a crime. However, the definition of coercion is the *threat* to accuse someone of a crime. TEX. PEN. CODE ANN. § 1.07(9)(c) (Vernon Supp.2004). What the officer asked does not meet this definition.

But the consent issue must also be evaluated as to whether consent was even necessary based upon the continuing level of information indicating Conde's involvement in illegal activity. As part of the investigation during the continued detention, a drug dog was used. The drug dog alerted on the van before the gas tank was dropped. This is a classic case of where the information received during the course of a continued detention justified further investigation and, therefore, further detention. The further investigation resulted in the discovery of the evidence now sought to be suppressed. The warrantless search was justified without consent.

### ISSUE NOT RAISED—PROBABLE CAUSE

This Court, as it has been known to do in the past, does not address the issues briefed, but instead, identifies and decides the case on another issue. The issue addressed by the majority, probable cause to seize the van, was not argued or even mentioned by Conde. Everything said about it is unnecessary, and I do not join in it. Because it is not an issue raised by the defendant, it could not result in the reversal of the conviction. We have been told by a unanimous Court of Criminal Appeals that we cannot reverse convictions on unassigned error. *Hailey v. State,* 87 S.W.3d 118, 121–122 (Tex.Crim.App.2002); *Gerron v. State,* 97 S.W.3d 597 (Tex.Crim. App.2003). So why does the majority engage in this gratuitous discussion? I do not know. But at least in this case, they do not reverse a conviction because of their error in discussing unassigned error.

This allows me to concur only in the result of the majority opinion.

CONCLUSION

Because the stop was valid, the continued detention was justified, and consent to search was unnecessary, the trial court did not err in denying Conde's motion to suppress. For the reasons discussed in this concurring opinion, I agree that the trial court's judgment should be affirmed.