IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00365-CR

No. 10-05-00366-CR

 

James Daniel Green,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 278th District Court

Madison County, Texas

Trial Court Nos. 05-10907-278-07

and 05-10909-278-07

 



MEMORANDUM  Opinion



 








          A jury convicted James Daniel Green of
two counts of burglary of a habitation and assessed his punishment at two terms
of forty years’ imprisonment to run concurrently.  Green contends in his sole
issue that there is insufficient evidence to corroborate the accomplice
testimony offered at trial.  We will affirm.

          Twice in the first week of January,
the ranch home of Tony Wolfskill was burglarized.  Each time guns, ammunition,
and other items were taken.  Green was charged in each burglary.  The primary
witnesses against him were his two accomplices, Matt Driskell and Jared Tidwell.
 Driskell and Tidwell were arrested in possession of certain stolen within
hours of the second burglary.  They immediately confessed and implicated Green
in the burglaries.  Each accomplice testified that Green was the leader.  In
addition to this accomplice testimony, two sheriff’s deputies, neighbors, and other
witnesses testified as to the facts of the break-ins and having seen Green in
the area of the Wolfskills’ house near the time of the burglaries.

          Green argues in his sole issue that
there is insufficient evidence to corroborate the accomplice testimony.  Accomplice
testimony must be corroborated by “other evidence tending to connect the
defendant with the offense committed.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  The test for sufficient
corroboration is to eliminate from consideration the accomplice testimony, and
then examine the remaining inculpatory evidence to ascertain whether it tends to
connect the defendant with the offense.  Cathey v. State, 992 S.W.2d
460, 462 (Tex. Crim. App. 1999); Phillips v. State, 72 S.W.3d 719, 722 (Tex. App.—Waco 2002, no pet.).  Evidence merely proving that a crime was committed is
insufficient.  Tex. Code Crim. Proc. Ann.
art. 38.14.

          We begin with a review of the
non-accomplice testimony.  The sheriff’s deputies and the Wolfskills testified
that the house had been broken into twice.  Tony Wolfskill and his brother testified
that the Wolfskills’ ranch house had been burglarized on the afternoon of
January 4, 2005, and on the evening of January 6, 2005.  Wolfskill identified
two rifles, field binoculars and other items found hidden in the woods near his
house as some of the items taken.  A bank bag and hunting knife found in
Driskell’s vehicle were also identified by Wolfskill as being among the items
stolen.  Two handguns taken in the first burglary and additional rifles and
ammunition stolen in the second break-in were never recovered.

          The Wolf skills’ neighbor Dallas Ivey
testified that on the morning of January 4, he saw a jeep abandoned on the road
near the Wolfskills’ ranch.  Earlier in the day, Green had been seen by another
witness driving that same jeep.  Ivey also testified that he saw Green and
another man, later identified as Tidwell, walking down the road away from the
Wolfskills’ ranch on the afternoon of the first burglary.  Ashley Nuss said
Green and Tidwell stopped her on the road that same afternoon.  When Green
asked her for a ride, he also showed her two handguns, which were similar to
those stolen in the first burglary.

          Ivey also testified that on January 6,
his brother and he went to investigate a car parked on the side of the road and
saw Green and Tidwell coming from the woods near the Wolfskills’ house.  Green
claimed to be having car trouble, but the car started immediately.  A cache of
the Wolfskills’ stolen guns were later found in that area of the woods.

          Ivey and his brother testified that
later that same evening they saw a red Dodge truck which they knew to belong to
Matt Driskell, driving slowly by the Wolfskills’ with its lights off.  They saw
the shadows of people running across the yard and jumping in the truck.  Once
away form the Wolfskills’ house, the headlights came on as the truck speed
away.  The Iveys had, in the weeks prior to the burglary, seen Green riding in
Driskell’s truck and spotlighting the Wolfskills’ house.  Green at that time
claimed he was going to knock on the door.

The question of whether sufficient corroborating
evidence exists does not invoke the traditional legal or factual sufficiency
analyses.  Cathey, 992 S.W.2d at 462.  The analysis of the sufficiency
of corroborating evidence is done on a case by case basis.  Munoz v.
State, 853  S.W.2d 558, 559 (Tex. Crim. App. 1993).  The non-accomplice
evidence need not directly link the defendant to the crime, nor does it alone
have to establish guilt beyond a reasonable doubt; rather the evidence need only
to tend to connect the defendant to the crime.  Cathey, 992 S.W.2d at
462.  Presence with accomplices at or around the time of the crime is not
sufficient corroboration alone, but it is an important factor.  Hernandez v.
State, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997); Jackson v. State,
745 S.W.2d 4, 13 (Tex. Crim. App. 1988).  Evidence of a guilty demeanor coupled
with other corroborating circumstances may tend to connect the defendant to the
crime.  Hernandez, 939 S.W.2d at 178.  Possession of the fruits of the
crime or even items similar to those taken is proper corroborating evidence.   Bradley
v. State, 48 S.W.3d 437, 441 (Tex. App.—Waco 2001, pet. ref’d); see also
Cockrum v. State, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988).

Here, the record
contains considerable non-accomplice testimony placing Green with his
accomplices shortly before and after the commission of each offense and not far
from the site of the offense.  Such evidence adds to the weight of the
corroborative evidence.  Burks v. State, 876 S.W.2d 877, 887-88
(Tex. Crim. App. 1994); Bradley, 48 S.W.3d at 441.  Testimony from the
neighbors as to having seen Driskell’s truck and people running from the house
shows when and how the crime was committed, offering further corroboration of
the accomplice testimony.  Bradley, 48 S.W.3d at 441 (citing Reed v.
State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988)).  Green acted
suspiciously prior to the burglary when he was seen with Driskell spotlighting
the Wolfskills’ property and also aroused suspicion following the first
burglary when he claimed to have car trouble but had no problems starting the
car.  He was also seen with handguns similar to those stolen from the
Wolfskills.

Although each piece of corroborating evidence
taken individually might be insufficient to tend to connect the defendant to
the offense, the totality of the evidence is enough for a rational jury to
conclude that Green was sufficiently connected to the burglaries through
non-accomplice testimony.  Hernandez, 939 S.W.2d at 178-79.  We overrule
Green’s sole issue on appeal and affirm the conviction.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed December 13, 2006

Do not publish

[CRPM]






he could perform a
protective body search, and Levi agreed. 
After the body search revealed nothing, Allovio directed Levi to sit on
the curb while he searched the vehicle.

          At
this time, Officers Lundquist and Rivas arrived on the scene.  The officers stood next to Levi as he sat on
the curb while Allovio searched the vehicle. 
After nothing was found, Allovio approached Levi and asked him if he had
anything hidden in his crotch.  Levi
stated that he did not, but gave his consent for Allovio to search his
crotch.  During the search, Allovio felt
a bulge that felt like a pill bottle.  Thereupon,
the officers handcuffed Levi and removed the object that was subsequently
determined to be a pill bottle containing cocaine.  The officers placed Levi under arrest.

          Levi
filed a motion to suppress the cocaine claiming that the cocaine was illegally
obtained.  The trial court denied the
motion, and Levi was sentenced in accord with a plea agreement to thirty years
in prison.

          In
his appeal, Levi argues that the trial court abused its discretion in
overruling his motion to suppress because (1) the cocaine was discovered as a
result of multiple illegal detentions; (2) his consent was involuntary; and (3)
the search was constitutionally unreasonable.

Standard of Review

          A
trial court's denial of a motion to suppress is reviewed for abuse of
discretion.  Welch v. State, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002); Joubert v. State, 129 S.W.3d 686, 687 (Tex. App.—Waco 2004, no pet.).  "A voluntary consensual search is an
exception to the probable cause and
warrant requirements of the Fourth Amendment to the United States Constitution
and Article I, Section 9 of the Texas Constitution."  Conde
v. State, 135 S.W.3d 252, 255 (Tex. App.—Waco 2004, no pet.); see also Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003).  The validity of a consent to search is a
question of fact to be determined from all the circumstances.  Rayford,
125 S.W.3d at 528.  The State has the
burden to prove by clear-and-convincing evidence that consent was freely and
voluntarily given.  Id.; Conde,
135 S.W.3d at 255.  While we give almost
total deference to the trial court's determination of facts, we review de novo
the trial court's application of the law. 
Id.; Conde,
135 S.W.3d at 255.

Illegal
Detention

          In
Levi's first issue, he argues that the trial court should have granted his
motion to suppress the cocaine because it was discovered as a result of
multiple illegal detentions.  Levi claims
that Allovio's request for consent to search the vehicle after telling Levi he
was free to go constitutes a second detention because the purpose of the traffic
stop was over.  Levi points to his
testimony that Rivas and Lundquist were standing next to him on the curb as
further evidence that this was a second detention because the officers by their
presence did not leave him with the impression that he was free to leave.  Furthermore, he argues that this second
detention was illegal because Allovio did not have a reasonable suspicion that
Levi was involved in any illegal activity; and therefore, the evidence should
be suppressed as fruit of the illegal detention.

          However,
asking additional questions, including asking for consent to search a vehicle,
during a legal traffic stop is not a separate detention.  Vargas
v. State, 18 S.W.3d 247, 252 (Tex. App.—Waco 2000, pet. ref'd).  It is not unreasonable per se to request
consent to search a vehicle after the completion of a traffic stop.  James
v. State, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd); Leach v. State, 35 S.W.3d
232, 235 (Tex. App.—Austin 2000, no pet.).  On the contrary, a police
officer may request consent to search a vehicle after the purpose of the
traffic stop has been accomplished as long as it is reasonable under the
circumstances and the officer has not conveyed a message that compliance with
the officer's request is required.  Leach, 35 S.W.3d at 235; see Simpson v. State, 29 S.W.3d 324, 328
(Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)(citing Ohio v. Robinette, 519 U.S. 33, 37-39, 117 S.Ct. 417, 420-21, 136
L. Ed. 2d 347, 353-55 (1996)). 
Therefore, the relevant question is whether the officer in asking for
Levi's consent gave the impression that an affirmative answer was required.

          Levi
was told he was free to leave before Allovio requested his consent to
search.  The officers testified that Levi
did not appear nervous or intimidated by them. 
The officers did not brandish their weapons, nor did they handcuff Levi
until after the contraband was discovered. 
Levi was not placed in a patrol car, but asked to sit on the curb for
his safety.  The evidence shows that
Allovio and the other officers did not convey a message that compliance with
Allovio's request for consent to search the vehicle was required.  James,
102 S.W.3d at 173.  Therefore, we
overrule Levi's first issue.




Involuntary
Consent

          In
his second issue, Levi argues that the trial court should have granted his
motion to suppress because his consent was involuntary.  For consent to be voluntary, it cannot be the
product of duress or coercion, express or implied.  Conde,
135 S.W.3d at 255 (citing Reasor v. State,
12 S.W.3d 813, 817 (Tex. Crim. App. 2000)). 
Voluntary consent must be positive and unequivocal, and it is not shown
by an acquiescence to a claim of lawful authority.  Conde,
135 S.W.3d at 255 (citing Carmouche v.
State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000)).

          In
determining whether consent was voluntary, we look to certain relevant factors,
such as: the youth of the accused; the education of the accused; the
intelligence of the accused; the constitutional advice given to the accused;
the length of the detention; the repetitiveness of the questioning; and the use
of physical punishment.  Hunter v. State, 102 S.W.3d 306, 311 (Tex. App.—Fort Worth 2003, no pet.); Reasor, 12 S.W.3d at 818.  Additionally, testimony by law enforcement
officers that no coercion was involved in obtaining the consent is evidence of
the consent's voluntary nature.  Martinez v.
State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); Hunter, 102 S.W.3d at 311.  A
police officer's failure to inform the accused that he can refuse consent is a
factor to consider in determining the voluntariness of consent; however, the
absence of such information does not automatically render the accused's consent
involuntary.  Johnson v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002); Hunter, 102 S.W.3d at 311. 

          There
is no evidence of the level of Levi's intellect, but the evidence shows that
Levi is an adult who has experienced previous encounters with law enforcement
officials.  The officers did not inform
Levi that he could refuse to give his consent. 
However, Levi was told he was free to go before Allovio asked for his
consent.  Levi was not arrested or
handcuffed before being asked to give his consent; therefore, there is no evidence
of physical punishment.  Evidence as to
the length of the detainment is conflicting, but at its longest it was twenty
minutes.  The evidence shows that on each
of the three occasions that Allovio asked for consent to search different areas,
Allovio asked only once.

          Levi
repeatedly points to the officers standing over him while he sat on the curb as
evidence that he was coerced into giving his consent.  However, there is no evidence that the
officers acted in any manner to coerce Levi. 
Testimony that the officers stood over Levi is no evidence that they
exhibited any behavior calculated to coerce him into giving his consent.  There is no evidence that the officers'
actions intimidated Levi.  On the
contrary, the evidence shows that Levi was calm and did not seem nervous.  

          Because
we must give appropriate deference to the trial court's determination of
historical facts and the credibility of the witnesses, we hold that the trial
court did not abuse its discretion in finding that Levi's consent was
voluntary.  Conde, 135 S.W.3d at 254; Joubert,
129 S.W.3d at 687; Hunter, 102 S.W.3d
at 312.  We overrule Levi's second issue.

Constitutionally
Unreasonable Search

          In
Levi's third issue, he argues that the search which revealed the cocaine hidden
in his crotch area was an unreasonable search under the Fourth Amendment
because the search exceeded the scope of Levi's consent.  U.S. Const. amend. IV; Harris v. State, 994 S.W.2d 927, 931 (Tex. App.—Waco 1999, pet.
ref'd).  Levi testified that after he
consented to the crotch search, Allovio unbuckled Levi's pants and placed a
flashlight down his crotch.  On the other
hand, Allovio testified that the crotch search was performed by only feeling of
Levi's crotch through his pants.  Allovio
could not remember using a flashlight, but stated that a flashlight is commonly
used in a search incident to an arrest after illegal drugs have been found.

          Because
there is conflicting evidence as to the manner of the search, we must defer to
the trial court's determination of the credibility of the witnesses.  Conde,
135 S.W.3d at 254.  Therefore, we hold
that the trial court did not abuse its discretion in its determination that the
search was reasonable.  We overrule
Levi's third issue.

CONCLUSION

          Having
overruled all of Levi's issues, we affirm the judgment.

 

 

                                                                             FELIPE
REYNA

                                                                              Justice

 

Before Chief Justice Gray,

          Justice Vance, and 

          Justice Reyna

Affirmed

Opinion delivered and filed August
 25, 2004

Publish

[CR25]