

# NUMBER 13-20-00085-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN PAUL BROOKS JR.,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the 249th District Court
## of Somervell County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant John Paul Brooks Jr. appeals his convictions for possession of a controlled substance of more than one gram but less than four grams and possession of a controlled substance of less than one gram, first- and second-degree felonies,

respectively.[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(b), (c); TEX. PENAL CODE ANN. § 12.42(d). By what we construe as five issues, Brooks argues the trial court (1) abused its discretion by denying his motion for a mistrial; (2) abused its discretion by denying his motion for continuance; (3) erred by denying his motion to suppress evidence; (4) erred by prohibiting Brooks from presenting evidence to the jury; and (5) erred by denying an article 38.23(a) instruction in the jury charge. *See* TEX. CODE CRIM. PROC. art. 38.23(a). We affirm.[2]

## I.    BACKGROUND

On December 12, 2018, Brooks was indicted for two counts of aggravated assault with a deadly weapon (counts one and two), possession of a controlled substance of more than one gram but less than four grams of methamphetamine (count three), and possession of a controlled substance of less than one gram (count four).[3] TEX. PENAL CODE ANN. § 22.02(a)(2); TEX. HEALTH & SAFETY CODE ANN. § 481.115(b), (c). Prior to trial, Brooks filed a motion to suppress, which the trial court denied. When trial was set to begin, Brooks filed a motion for continuance alleging he was unable to secure the presence of two witnesses, which he deemed necessary. The trial court denied Brooks's motion for continuance. After the jury was empaneled and sworn, but prior to opening statements or evidence, the trial court was notified that a juror communicated with another

---

[1] The jury also found two enhancement paragraphs to be true.

[2] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] Prior to trial, the State abandoned counts one and two and renumbered the possession charges as one and two, respectively.

2

individual about the case. Brooks moved for a mistrial, citing juror misconduct. The trial court conducted a hearing on the allegations and subsequently denied Brooks's motion for mistrial.

## A.      Search Warrants

On October 19, 2018, Somervell County Sheriff's Office (SCSO) Captain Michael Gilbert signed a probable cause affidavit for a search warrant. According to the affidavit, Julie Dowdy presented herself to the Glen Rose Medical Center emergency room after being physically assaulted by Brooks. Dowdy told SCSO deputies Josh Beatty and John Gonzales that after an argument in Brooks's van, Brooks shot her in the face with a $CO_2$-powered BB gun and threatened to cut her throat with a green camouflage-patterned folding knife. Beatty observed Dowdy to have a hole in her cheek, visible swelling on the right side of her face, and blood on her clothing and hospital bed sheets; Beatty also observed photographs on Dowdy's phone of herself covered in blood.[4] The affidavit sought a warrant to search Brooks's home and van for the BB gun, folding knife, and to locate Dowdy's blood stains in Brooks's van or on his wheelchair. The same day, a judge signed the search warrant, permitting SCSO to search Brooks's home and vehicle for the items listed.

Gilbert testified that on October 19, 2018, he and several other officers executed the search warrant at Brooks's residence. According to Gilbert, SCSO evidence clerk Katy Linnaberry and Texas Ranger Don Stoner searched Brooks's vehicle, while Gilbert,

_____

[4] Beatty's observations were set out in writing in Defendant's Exhibit 1-A, the second page of Gilbert's affidavit. Exhibit 1-A was originally missing from Defendant's Exhibit 1, the affidavit for a search warrant.

3

SCSO Investigator Thomas Cochran, and SCSO Chief Deputy Dwayne Griffin searched Brooks's residence. During the search, a $CO_2$-powered BB gun and green camouflage-patterned folding knife were recovered; additionally, Stoner found what appeared to be two blood stains in Brooks's vehicle. SCSO investigators found glass pipes and a crystalline substance later determined to be approximately 1.61 grams of methamphetamine inside Brooks's home. Griffin found several items used to consume narcotics in Brooks's nightstand while the methamphetamine was found inside a case in Brooks's chest of drawers at the foot of his bed. Another glass pipe was discovered by Cochran in the entertainment center in Brooks's living room.

Following the October 19 search, Gilbert obtained an arrest warrant for Brooks which was executed at his home on November 5, 2018. During the arrest, Stoner noticed a tray located on Brooks's nightstand with another glass pipe and a bag containing a white, crystalline substance, later determined to be approximately .27 grams of methamphetamine.

## B.    Motion for Continuance

Brooks filed a motion for continuance prior to trial on the basis that he was unable to locate and serve subpoenas on Brett Yates and Amanda LaFan[5], who were material witnesses to the assaultive offenses.[6] The trial court held a hearing on Brooks's motion on November 25, 2019, wherein the State notified the court that it would not be

---

[5] LaFan also appears in the record as LeFan.

[6] Brooks's counsel represented to the trial court that he had filed requests for subpoenas with the district clerk's office ten days prior, but the private process server had been unable to locate the witnesses.

proceeding on the assaultive offenses. In response, Brooks's counsel noted that he believed the witnesses were necessary to rebut the information set out in Gilbert's affidavit in support of the October 19, 2018 search warrant as part of Brooks's motion to suppress. The trial court took the motion under advisement.

Brooks reurged the motion on December 2, 2019, when the parties were set to begin voir dire. During the discussion, Brooks testified that Yates and LaFan "were present and observed the behavior of both [Brooks] and [Dowdy]" on the day of the alleged assault. On cross examination, Brooks confirmed that neither Yates or LaFan were present when the warrants were executed on October 19 and November 5. Brooks's counsel noted that while Yates[7] may be present at the time of the hearing, LaFan still had not been served. The trial court denied Brooks's motion for continuance. On December 5, 2019, prior to opening statements and evidence, Brooks yet again moved for a continuance asserting that LaFan had still not been located and served. The trial court again denied Brooks's motion.

## C.    Motion to Suppress

Although Brooks filed a pretrial motion to suppress, the trial court did not hear the motion until after the jury was sworn and empaneled. Brooks's motion to suppress challenged the initial affidavit, alleging the affidavit in support of the request "fail[ed] to state facts sufficient to allege[] probable cause to search the residence." Brooks specifically challenged the affidavit as being composed of conclusory statements rather than factual allegations, and he argued that the affidavit "fail[ed] to allege sufficient

---

[7] On December 3, 2019, Brooks filed for a writ of attachment for Yates. Yates was taken into custody by SCSO and was present during the jury trial.

underlying facts to demonstrate that there would be a fair probability that evidence tending to show that [Brooks] committed an offense would be found in the residence," the affiant failed to corroborate the facts contained therein by independent investigation, and that "the information in the affidavit is too general to support a conclusion that any evidence tending to show that the Defendant committed an offense would be found." Despite the numerous grounds for suppression listed, at the hearing Brooks only presented evidence on and argued that Gilbert intentionally withheld information that would have eliminated probable cause for the search warrant. Brooks makes the same argument on appeal and does not address the other grounds listed in the motion to suppress.

Gilbert was the only witness to testify during the motion to suppress. Gilbert testified that SCSO began investigating an assault after Dowdy went to the Glen Rose Medical Center to obtain treatment for injuries allegedly sustained during the assault. According to Dowdy's interview, she was with Brooks and two other individuals on October 10, 2018, when the assault occurred: Yates and LaFan—both of whom witnessed the assault. Gilbert testified that although he made attempts to interview Yates and LaFan, he was unable to. According to Gilbert, Yates and LaFan were homeless and did not have phones through which they could be contacted.[8]

Gilbert stated he did not interview Brooks following the October 10 assault to prevent Brooks from removing or destroying potential evidence. Gilbert testified that he did not mention Yates or LaFan in his affidavit because he had not located either of them

---

[8] Gilbert testified that he was aware Yates had a phone that only operated via internet, but Gilbert could not contact him on it.

by the time he applied for the search warrant. Gilbert recounted that he found Dowdy's claims to be credible based on her injuries, as observed by Beatty and Gonzales, and the way she described the assault. Gilbert could not recall whether, at the time he completed the probable cause affidavit, he was aware that Dowdy had a criminal history.[9]

Dowdy's written statement that she provided to SCSO was admitted for the trial court's review. According to Dowdy's statement, while in Brooks's vehicle, Brooks grabbed Dowdy, so she grabbed him back. Brooks then repeatedly punched her in the head and ultimately grabbed a silver or chrome and black $CO_2$-powered BB gun and shot her in the face. Although Yates and LaFan were not specifically named in her statement, the statement refers to at least one other individual and explains that during the assault, Dowdy "started screaming for someone to hand [her] a knife." Dowdy's statement then goes on to state that Brooks "put a camo folding knife approximately 4[inches] long to the right side of [her] throat." The assault ended and Dowdy walked away, eventually walking herself to the emergency room.

During his case in chief, Brooks called Yates and Dowdy, but the State objected as to relevance. After an offer of proof for each witness, the trial court sustained the State's objections. Brooks requested the trial court include a jury instruction pursuant to Texas Code of Criminal Procedure article 38.23 regarding unlawful searches or seizures. TEX. CODE CRIM. PROC. ANN. art. 38.23. The trial court denied Brooks's motion to suppress

---

[9] When asked by Brooks's counsel whether Gilbert knew "[t]hat [Dowdy] had been convicted of assault on a public servant," Gilbert responded that, "I would say probably so because, I mean, I knew that she had the criminal record, so I would think that I probably knew what it was for." Brooks's counsel also asked whether Gilbert was "[a]ware that she was currently [sic] on a felony probation for securing the execution of a document by deception[,]" to which he responded that "[he] knew ultimately that she was on probation." Records of Dowdy's convictions were not offered or admitted into the record.

7

and request for jury instruction pursuant to article 38.23 and entered findings of fact and conclusions of law related to the motion to suppress and underlying affidavit and search.

## D.    Motion for Mistrial

On December 5, 2019, after the jury was empaneled and sworn, but before opening statements or evidence was heard, the trial court notified the parties that its civil court coordinator, Gina Horton, received a call regarding jury misconduct. Horton testified that she received a call from a gentleman who would not identify himself but stated that "one of the jurors on the case went to work and talked to co-workers about the case and said things that could lead a person to believe that they may have already made up their mind as to how they feel about the case." Although the man would not identify himself, he was subsequently identified as Lance Matthews, husband to juror Lory Matthews.

Brooks moved for a mistrial following Horton's testimony, citing concerns about not receiving an impartial jury. An investigator with the Somervell County District Attorney's office, Derrell McCravey, testified that he discovered the caller was Lance. According to McCravey's investigation, Lance called the trial court because he received information that another juror, Kimberly Parker, spoke to a co-worker about the case and demonstrated that she already determined what the outcome of the case should be. Parker's co-worker was Samantha Gosling, juror Matthews's daughter and Lance's stepdaughter.

When called to testify, Parker denied making any comments about the case or discussing the case. Parker testified that she did not have any information about Brooks, did not know who he was, was unaware of the facts of the case, and had not formed an

opinion regarding the outcome of the case. Parker affirmed that she would "keep an open mind and give fair consideration to whatever the testimony is of the witnesses and the evidence as presented[.]"

Juror Matthews testified that Gosling inquired about the case, but Matthews informed her she could not discuss the case. Juror Matthews explained that Gosling told her the person Gosling spoke with was not selected for the jury, but juror Matthews believed the person was on the jury. According to juror Matthews, Gosling's inquiry was based on her not understanding "why a drug charge would be going before a jury, something to that effect." Juror Matthews denied that Gosling indicated the person Gosling spoke with made up their mind about the outcome of the case. When asked by the State: "[B]ased on that conversation you had with your daughter, there was nothing to indicate to you that somebody on the Jury had already made up their mind[?]" Juror Matthews confirmed: "Right." Juror Matthews also denied having made up her mind about the case and confirmed she would listen to the evidence and testimony to reach a verdict.

Gosling testified that Parker "nonchalantly said, oh it's a drug—a drug charge; I didn't even know they did trials for that." Gosling said the rest of the conversation involved "a joke about how half the town of Glen Rose got summoned," and "[they] laughed about how she said that she'd never been picked for jury duty out of all the times she had been summoned." Gosling repeatedly denied that Parker made any comments about how the case might end up but that "she said there must be more to the story and that she would have to find out[.]" Following Gosling's testimony, the parties each made their argument to the trial court. The trial court denied Brooks's motion for mistrial and reminded the jury

they were not to discuss any facet of the case with anybody.

**E.     Trial**

During trial, the State called the officers that executed the October 19 and November 5 warrants to testify to the items they found and where they found them. James Milam, a forensic scientist with the Texas Department of Public Safety Crime Lab, testified that the 1.61 grams of crystalline substance he tested was methamphetamine. Lindsay Gasche, another forensic scientist with the Texas Department of Public Safety Crime Lab, testified that the .27 grams of crystalline substance that she tested was methamphetamine.

After the State rested, Brooks called Yates to testify. Brooks's counsel notified the trial court and parties that he intended to question Yates regarding the alleged assault on Dowdy which the State objected was irrelevant to the guilt or innocence of the charge of possession of a controlled substance. Brooks made an offer of proof wherein Yates testified that Dowdy began "wailing [sic] on [Brooks]" following an argument. Yates denied that Brooks threatened Dowdy with a knife and denied seeing Brooks shoot Dowdy with a BB gun. The trial court sustained the State's objection to Yates's testimony.

Brooks also called Dowdy as a witness. Following the State's objection to Dowdy's testimony as irrelevant, Brooks made an offer of proof. As part of the offer of proof, Brooks demonstrated that he intended to cross-examine Dowdy on her statements made to law enforcement regarding the altercation between her and Brooks and to introduce evidence of Dowdy's criminal history. The trial court sustained the State's objection.

Brooks testified during trial as well. Brooks's testimony focused primarily on the

altercation between he and Dowdy. However, Brooks also testified regarding the circumstances surrounding the possession charges. Specifically, Brooks testified that due to his disabilities, he could not reach the chest of drawers where some of the methamphetamine and paraphernalia were found. Brooks denied that the methamphetamine recovered from his home belonged to him. Brooks admitted to several prior felony convictions, including possession of cocaine, possession of methamphetamine, and burglary of a habitation.

The jury found Brooks guilty of possession of a controlled substance of more than one gram but less than four grams and possession of a controlled substance of less than one gram. TEX. HEALTH & SAFETY CODE ANN. § 481.115(b), (c); TEX. PENAL CODE ANN. § 12.42(d). The jury found both enhancement paragraphs to be true and assessed punishment at twenty-five years and two years of confinement, respectively, to run concurrently in the Texas Department of Criminal Justice–Institutional Division. This appeal followed.

## II. MOTION FOR MISTRIAL

By his first issue, Brooks argues the trial court erred by denying his motion for mistrial based on juror misconduct. [10]

### A. Standard of Review and Applicable Law

"We review a trial court's denial of mistrial for an abuse of discretion." *Balderas v. State*, 517 S.W.3d 756, 783 (Tex. Crim. App. 2016). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation."

---

[10] No alternate juror was empaneled.

11

*Smith v. Phillips*, 455 U.S. 209, 217 (1982). "[I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.* "Due process means a jury capable and willing to decide the case solely on the evidence before it." *Id.*

"When a juror converses with an unauthorized person about the case, 'injury to the accused is presumed' and a new trial may be warranted." *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997) (quoting *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991)). "However, the State may rebut this presumption of harm." *Id.* "In determining whether the State rebutted the presumption of harm, appellate courts should defer to the trial court's resolution of the historical facts and its determinations concerning credibility and demeanor." *Id.* Appellate courts "should afford almost total deference to a trial court's determination of historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "[I]n essence[,] [we] view the evidence in the light most favorable to the trial courts findings (or ruling, if there are no pertinent findings)." *Quinn*, 958 S.W.2d at 402.

## B. Analysis

Because the evidence reflects that at least one juror conversed with an unauthorized person about the case, injury to Brooks is presumed. *See id.* at 401. However, we must determine whether the presumption was sufficiently rebutted, keeping in mind that we "should defer to the trial court's resolution of the historical facts and its determinations concerning credibility and demeanor." *See id.* In the present case, Parker commented to Gosling that she was not aware that defendants were afforded jury trials

12

for drug charges. Despite Lance Matthews's concern that Parker had made her mind up about the case, Gosling denied that Parker made any indication about her thoughts regarding guilt or innocence. Gosling then raised the issue with her mother, juror Matthews. Both juror Matthews and Gosling testified that juror Matthews promptly ended the discussion after Gosling brought it up. Both jurors, Matthews and Parker, testified that they had not made up their mind about the case and were willing to hear all the evidence and testimony presented. The conversations involving Matthews, Parker, and Gosling all took place prior to opening statements and the presentation of evidence.

In *Quinn*, a juror had a phone conversation with a co-worker wherein the juror told the co-worker that the case involved the rape of a five-year-old child and made comments about possible punishments for the defendant. *See id*. at 397. When questioned, the juror testified that he had "fully and fairly listen[ed] to all [the] testimony presented in [the defendant's] defense with an open mind." *Id.* at 399. The Texas Court of Criminal Appeals concluded that the record supported the trial court's findings that the juror did not communicate the conversation to any other jurors and that the conversation did not affect the jury's deliberations. *Id.* at 402. Accordingly, the court held that the evidence supported trial court's decision to deny appellant's motion for new trial on the ground of improper juror communications. *Id*.

Here, the trial court did not make explicit findings regarding the jurors' communication with unauthorized parties. However, the trial court's ruling indicates that the State overcame the presumption of harm to Brooks. *See id.* Giving the appropriate deference to the trial court, we conclude that the record supports the trial court's ruling.

13

*See id.* Specifically, the words communicated by the jurors did not indicate that the jurors had reached a conclusion about the case. *See id.* Further, both jurors testified under oath that they were willing to hear all the evidence and testimony presented and only then decide. *See id.* Accordingly, we conclude that the trial court did not abuse its discretion when it denied Brooks's motion for mistrial. *See Balderas*, 517 S.W.3d at 783. Brooks's first issue is overruled.

### III. MOTION FOR CONTINUANCE

By his second issue, Brooks argues the trial court erred by denying his motion for continuance to secure two witnesses' presence at trial.

### A. Standard of Review and Applicable Law

"A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion." *Cruz v. State*, 565 S.W.3d 379, 381 (Tex. App.—San Antonio 2018, no pet.); *see also Gonzales v. State*, No. 10-19-00208-CR, 2020 WL 5938812, *1 (Tex. App.—Waco Aug. 26, 2020, no pet.) (mem. op., not designated for publication). "A trial court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement." *Cruz*, 565 S.W.3d at 381. "[I]n order to show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him." *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). To show harm, a defendant is required to show "that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in the delay of trial." *Id.* (quoting

14

George Dix & Robert O. Dawson, *42 Texas Practice: Criminal Practice and Procedure* § 28.56 (2d ed. 2001), at 532–33).

"A criminal [a]ction may be continued on the written motion of the State or of the defendant, upon sufficient cause shown." TEX. CODE CRIM. PROC. § 29.03. "A missing witness is a valid reason for continuance and serves to justify appropriate delay." *Hart v. State*, 818 S.W.2d 430, 437 (Tex. App.—Corpus Christi–Edinburg 1991, no pet.). In an original motion for continuance by a defendant on the basis of a missing witness, the motion must state:

1. The name of the witness and his residence, if known, or that his residence is not known.

2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.

3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.

4. That the witness is not absent by the procurement or consent of the defendant.

5. That the motion is not made for delay.

6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. The truth of the first, or any subsequent motion, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If a motion for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the motion was of a material character, and that the facts set forth in said motion were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term.

TEX. CODE CRIM. PROC. ANN. art. 29.06. In order to obtain a continuance, the witness must be material. *See Hardin v.* State, 471 S.W.2d 60, 62 (Tex. Crim. App. 1971). Subsequent motions for continuance on the same ground shall state: "(1) that the testimony cannot be procured from any other source known to the defendant; and (2) that the defendant has a reasonable expectation of procuring the same at the next term of court." TEX. CODE CRIM. PROC. ANN. art. 29.07.

## B. Analysis

Brooks's first motion for continuance was filed on November 25, 2019, approximately one week before trial was scheduled to begin. Although Brooks's motion did not fully comply with the requirements set forth in article 29.06, the State did not object to Brooks's motion, and the trial court heard evidence and argument related to Brooks's motion. *See id.* art. 29.06. Brooks alleged that witnesses Yates and LaFan were material witnesses to the alleged assault and would offer testimony contrary to Dowdy's statements. Neither Brooks nor the State had reliable addresses for either witness. Brooks requested subpoenas be issued on November 15, which were subsequently issued by the district clerk's office. The trial court took Brooks's motion for continuance under advisement and postponed ruling until December 2, 2019, when jury selection was set to begin. Brooks reurged his motion for continuance again on December 5, 2019, prior to the start of opening statements and presentment of evidence. By this time, Yates had been found and was in the custody of SCSO, pursuant to a writ of attachment.

At the time Brooks's motion was heard, the State abandoned the two aggravated assault with a deadly weapon charges—the charges of which Yates and LaFan were

16

alleged to be material witnesses. As the State noted, Yates and LaFan were not alleged to have any knowledge of or would present testimony to Brooks's charges of possession of a controlled substance. *See id.* art. 29.06(3). Brooks alleges that, contrary to the State's assertion, LaFan's testimony was necessary and material as a "key part of the defense strategy" of filing and arguing his motion to suppress. As discussed *infra*, LaFan's testimony was neither material nor necessary for the trial court to consider Brooks's motion to suppress. *See id.* art. 29.06(6), 29.07(1); *Hardin*, 471 S.W.2d at 62. Yates and LaFan were both present during the alleged assault; however, despite Yates's appearance via writ of attachment, Brooks did not call Yates as a witness during his motion to suppress hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 29.07(1). Further, Brooks provided no argument or evidence that he would be able to secure LaFan's presence with a continuance. *See id.* art. 29.06(6), 29.07(2). Accordingly, the trial court did not abuse its discretion when it denied Brooks's motion for continuance. *See Cruz*, 565 S.W.3d at 381. Brooks's second issue is overruled.

## IV.    MOTION TO SUPPRESS

By his third issue, Brooks argues the trial court erred by denying his motion to suppress. Specifically, Brooks argues the probable cause affidavit upon which the October 19, 2018 search warrant relied omitted material information that would have eliminated probable cause.

## A.    Standard of Review and Applicable Law

In reviewing probable cause in an affidavit, "we give great deference to the magistrate's decision to issue the warrant and determine whether, considering the totality

17

of the circumstances, the magistrate had a 'substantial basis for concluding probable cause existed.'" *Morris v. State*, 62 S.W.3d 817, 821 (Tex. App.—Waco 2001, no pet.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see also Martin v. State*, 620 S.W.3d 749, 763 (Tex. Crim. App. 2021). "Whether probable cause exists to support the issuance of a search warrant is determined from the 'four corners' of the affidavit alone." *Id.* (citing *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996)). "[T]he test is whether the affidavit, read in a commonsensical and realistic manner and afforded all reasonable inferences from the facts contained within, provided the magistrate with a 'substantial basis' for the issuance of a warrant." *Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020) (quoting *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011)). Whether probable cause exists is a question of law. *Ramos v. State*, 31 S.W.3d 762, 764 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

"Statements made during the pre-trial hearing on the motion to suppress do not factor into that determination." *Id.* However,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). If the defendant establishes by a preponderance of the evidence that the affiant committed perjury or recklessly disregarded the truth, the affidavit is considered without the false information. *Id.* at 156. If the false information is set aside and "the remaining content is insufficient to establish

18

probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*; *Hyland v. State*, 574 S.W.3d 904, 912 (Tex. Crim. App. 2019). While some federal courts have held that *Franks* equally applies to omissions in the affidavit, the Texas Court of Criminal Appeals has not yet done so. *See Massey*, 933 S.W.2d at 146; *see also Renteria v. State*, 206 S.W.3d 689, 703–04 (Tex. Crim. App. 2006) (assuming but not deciding *Franks* applies to material omissions); *but see Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.) (holding *Franks* does apply to material omissions in the probable cause affidavit). If *Franks* were to apply to omissions made intentionally or with reckless disregard for the accuracy of the affidavit, "the trial court would determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for the defendant's arrest." *Gonzales*, 481 S.W.3d at 311. "If, after including the omitted material, the affidavit did not establish probable cause, then the search warrant would be voided and the fruits of the search excluded." *Id.*

## B. Analysis

In order for *Franks* to apply, Brooks was required to show that Gilbert withheld *material* information either intentionally or with reckless disregard for the accuracy of the affidavit. *See id.* Brooks made no showing that Gilbert acted intentionally or with reckless disregard for the accuracy of the affidavit. *See Gonzales*, 481 S.W.3d at 311. Here, Dowdy complained that Brooks had assaulted her by punching her in the head and shooting her in the face with a BB gun. Beatty personally observed Dowdy's facial swelling, hole in her cheek, and blood on her hospital bed and clothing— consistent with

19

her description of the events. *See Foreman*, 613 S.W.3d at 164. Further, Gilbert included in the affidavit that Dowdy told officers the altercation initiated as an argument, that she struck Brooks as well, and that she requested a knife in response to Brooks striking her with his fists. *See id.* Finally, Dowdy was able to describe the situation with a significant amount of detail, including the time, location, and manner of the attack. *See id.* Given the totality of the circumstances, Dowdy's criminal history and the absence of identifying information for two potential witnesses in the affidavit was not material. *See Massey*, 933 S.W.2d at 145–46; *Foreman*, 613 S.W.3d at 164. Even if the omitted information[11] was included in the probable cause affidavit, the magistrate had a substantial basis for determining probable cause existed. *See Foreman*, 613 S.W.3d at 164; *Morris*, 62 S.W.3d at 821. Brooks's third issue is overruled.

## V. ARTICLE 38.23 INSTRUCTION

By his fourth and fifth issues, Brooks argues the trial court erred by excluding Dowdy's and Yates's testimony as it relates to the underlying assault and committed harmful error by excluding an article 38.23 instruction in the jury charge, respectively. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23. Because Brooks's article 38.23 instruction relied on the testimony of Dowdy and Yates, we consider these issues together.

### A. Standard of Review and Applicable Law

#### 1. Witness Testimony

"We review a trial court's exclusion of testimony under an abuse of discretion

---

[11] Although Brooks argues on appeal that Gilbert did not include in his affidavit that Dowdy is on probation for executing a document by deception, Dowdy's criminal history was never sufficiently established. However, even assuming that is true, our conclusion stands. *See Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.).

standard." *Webb v. State*, 575 S.W.3d 905, 907 (Tex. App.—Waco 2019, pet. ref'd). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles." *Id.* "When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the 'zone of reasonable disagreement.'" *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

"Irrelevant evidence is not admissible." TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401; *Teer v. State*, 895 S.W.2d 845, 851 (Tex. App.—Waco 1995, pet. dism'd). "Exclusion of evidence will result in reversal only where a substantial right of the accused has been affected." *Id.*

### 2.   Article 38.23 Instruction

"We review the trial court's decision not to include a defensive issue in the jury charge for an abuse of discretion." *Bundage v. State*, 470 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Thomas v. State*, No. 10-11-00250-CR, 2013 WL 2639168, *7 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op. not designated for publication) (applying abuse of discretion standard to denial of article 38.23(a) instruction in jury charge). When we review a charge for potential error, we engage in a two-step process. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). The standard of review differs depending on whether the defendant made a timely objection at trial. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). If the error was the subject of a

timely objection, as here, reversal is required if there is some harm to the defendant as a result of the error. TEX. CODE CRIM. PROC. ANN. art. 36.19; *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). First, we determine if there was error and, if so, we determine if there is some harm to the defendant. *Id.*

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or not credible. *Krajcovic v. State*, 393 S.W.2d 282, 286 (Tex. Crim. App. 2013); *see also* TEX. PENAL CODE ANN. § 2.03(c) ("The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense."). Article 38.23(a) of the code of criminal procedure provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). But "[i]t is an exception to [article 38.23(a)] that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b).

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242

22

S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To be entitled to the submission of jury instructions under article 38.23(a), a defendant must meet three requirements: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

## B. Analysis

After the State objected to the relevance of Yates's testimony as to the possession charges, Brooks made an offer of proof as to Yates's anticipated testimony. The summary of Yates's testimony was that Dowdy was the aggressor in the altercation that led to the search warrant. Brooks argued that the testimony was in support of Brooks's motion to suppress, despite the motion to suppress having been denied. The trial court sustained the State's objection. The State similarly objected to Dowdy's testimony. During Brooks's offer of proof as to Dowdy's testimony, Brooks identified to the trial court that he would "like to offer the evidence of her misstatements[12] . . . . and be permitted to impeach her with her two prior felony convictions." The trial court again sustained the State's relevance objection. Because neither Yates nor Dowdy's testimony tended to make the existence of whether Brooks was in possession of methamphetamine more or less probable, their testimony was not relevant to the matter before the jury. *See* Tex. R. Evid. 401, 402; *Teer*, 895 S.W.2d at 851. Further, their testimony did not tend to make whether Gilbert acted in good or bad faith more or less probable. *See* Tex. R. Evid. 401, 402; *Teer*, 895 S.W.2d at 851. The trial court did not abuse its discretion by sustaining the State's objection and

---

[12] The misstatements Brooks referred to was the use of one of two racial slurs that a third party used during the argument; Dowdy had previously used one in writing and another during her testimony.

excluding Yates's and Dowdy's testimony. *See Baldree*, 248 S.W.3d at 230.

Regarding Brooks's jury instruction challenge, as noted *supra*, whether probable cause exists is a matter of law, not fact. *See Ramos*, 31 S.W.3d at 764. As such, Brooks would not be entitled to the instruction absent a question of fact for the jury. *See Madden*, 242 S.W.3d at 510. Further, article 38.23(b) provides an exception for the instruction when "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). Having previously concluded that Gilbert did not act intentionally or with reckless disregard to the accuracy of the affidavit, we conclude article 38.23(b) is implicated. *See id.* Accordingly, Brooks was not entitled to a jury instruction under article 38.23(a), and the trial court did not abuse its discretion in denying Brooks's requested instruction. *See id.*; *Ramos*, 31 S.W.3d at 764. Brooks's fourth and fifth issues are overruled.

## VI. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
17th day of June, 2021.

24